Syllabus.

## Richmond.

JESSER AND OTHERS v. ARMENTROUT'S EX'OR 'AND OTHERS.

November 20, 1902.

1. CHANCERY PRACTICE—*Bill Taken for Confessed—What Decree Warranted—Rights of Defendant.*—Although a defendant has not demurred, pleaded, or answered, he is not tnereby precluded from showing that the pleadings and proof are insufficient to warrant the decree rendered. Upon a bill standing wholly confessed the complainant is not entitled to a decree as of course, according to the prayer of the bill, but only to such decree as would be proper upon the statements of the bill assumed to be true. The case in judgment, however, was not heard as upon a bill taken for confessed, as witnesses were examined by the complainant and cross-examined by the defendants, and the master's report was excepted to by the defendants.

2. HUSBAND AND WIFE—*Conveyance to Husband—Payment With Wife's Money—Resulting Trust—Case in Judgment.*—Where a bill shows on its face that land conveyed to a husband was paid for with money acquired from the estate of the wife's father prior to the passage of the married woman's act, and there is no averment that it was her equitable separate estate, or that there was any agreement, promise or understanding at the time by which the interest of the husband in it was in any wise diminished, or it was impressed with a trust in her favor, the presumption is that the money, when received, was his by virtue of his marital right. and no trust will result in favor of the wife. It is immaterial that the wife always spoke of the land as hers, and died in the belief that it was. In tne case in judgment, if the averments of the bill were sufficient, the evidence is inadequate to establish either an express parol trust, or a resulting trust.

3. RESULTING TRUSTS—*How Established.*—In order to establish a resulting trust by payment of purchase money it is indispensable that the money be paid, or an absolute obligation be assumed by the beneficiary as a part of the original transaction, at or before the time of the conveyance, and not afterwards.

4. PAROL TRUST IN LANDS—*Proof Required.*—If a parol trust can be
created in lands, the declaration should be unequivocal and explicit,
and established by clear and convincing testimony.

Appeal from a decree of the Circuit Court of Augusta
county, pronounced June 11, 1901, in a suit in chancery
wherein the personal representative and heirs of Rebecca F.
Armentrout (appellees) were the complainants, and the appel-
lants and others were the defendants.

*Reversed.*

The subject matter in controversy, and the relations of the
parties thereto will probably be best understood from the state-
ments of the bill, and it is accordingly set forth below. Re-
becca F. Armentrout left a will, by which, after the payment
of her debts, she gave pecuniary legacies amounting to $325
to the "trustees of St. James Lutheran church," of which she
was a member, and gave all the residue of her estate to her
brothers and sisters, to be equally divided between them. The
following is a copy of the bill:

"To the Hon. S. H. LETCHER, Judge of the Circuit Court of
Augusta County:

"Complaining, show unto your Honor, your orators, O. S.
Strole, in his own right and as executor of the last will and
testament of Mrs. Rebecca F. Armentrout, deceased; Samuel
F. Strole, John P. Strole, Mary J. Huffman, Isaac H. Strole,
Siram C. Strole and James P. Strole.

"That your orators are the sole surviving brothers and sisters
and heirs at law of the said Mrs. Rebecca F. Armentrout (*nee*
Strole), who was the widow of Jacob H. Armentrout; that the
father and mother of your orators died in the lifetime of said
Rebecca F. Armentrout, that said Rebecca F. Armentrout died
in Augusta county on the . . . . day of . . . . 1900, without
issue; and that her last will and testament was duly probated

in Augusta County Court at its January term, 1900; and that your orator, O. S. Strole, qualified as executor thereof. Your orators file herewith an office copy of said last will and testament, marked Exhibit X, which they pray may be taken and read as a part of this bill.

"Your orators further show that the trustees of St. James Lutheran church, in Augusta county, are legatees under said will, and that after payment of the legacies provided for said trustees, your orators are residuary legatees and sole devisees thereunder. Your orators further show that Wm. A. Freed and A. G. McCune are the surviving trustees of said St. James Lutheran church; the other trustee, James D. Coyner, having lately departed this life.

"Your orators further show that for many years prior to her death, and during the lifetime of her husband, Jacob H. Armentrout, said Rebecca F. Armentrout and the said Jacob H. Armentrout resided upon a farm of some twenty-five acres, situate in Augusta county, which was conveyed by deed of Emanuel Miller and wife to Jacob H. Armentrout, on the 10th of October, 1868, and is recorded in the clerk's office of the County Court of Augusta county, an office copy of which said deed, marked Exhibit Y, is herewith filed and prayed to be taken and read as a part of this bill. Your orators aver that this is the real estate which is undertaken to be disposed of by the said will of Rebecca F. Armentrout; that the said Rebecca F. Armentrout lived and died in the belief that this property stood in her name and was hers absolutely; that the property was bought with her money, derived from her father's estate; and that her right to control and dispose of it absolutely and without qualification was never denied or controverted by her husband; and your orators aver and charge that although standing upon the record in the name of Jacob H. Armentrout, it was the property of the said Rebecca F. Armentrout, and passed to your orators under the will as absolutely as if the said deed had been taken in her name.

"Your orators further aver and charge that the said Jacob H. Armentrout died intestate and without issue, two or three years before the death of said Rebecca F. Armentrout; and that his sole heirs at law and distributees are Mrs. Fannie Poindexter and Mrs. Rosa L. Haines, daughters of said Jacob's brother, George W. Armentrout, deceased, and Mrs. Rosa Jesser, granddaughter of said George W. Armentrout, whose father, James A. Armentrout, has departed this life; that the husband of Mrs. Fannie Poindexter is Mr. W. R. Poindexter; the husband of said Mrs. Rosa L. Haines is C. E. Haines, and the husband of said Mrs. Rosa Jesser is C. F. Jesser.

"Your orators are advised that they are entitled to come into a court of equity of competent jurisdiction and to have a decree establishing their title to said real estate under the last will and testament of said Mrs. Rebecca F. Armentrout, as aforesaid.

"For as much, therefore, as they are without remedy, save in equity, where such matters are alone and properly cognizable, they pray that Mrs. Fannie Poindexter, W. R. Poindexter, Mrs. Rosa L. Haines, C. E. Haines, Mrs. Rosa Jesser and C. F. Jesser and W. A. Freed and A. G. McCune, surviving trustees of St. James Lutheran church, be made parties defendant to this bill, and required to answer the same; but answer under oath as to each of said defendants is expressly waived; that the said real estate may be decreed to belong to your orators as devisees of said Mrs. Rebecca F. Armentrout; that all proper orders and decrees may be entered in this cause and references had; and that your orators may receive such other and further general relief as to equity shall seem meet, and their case may require, and as in duty bound they will ever pray, &c."

*A. C. Braxton* and *Nelms & Wise,* for the appellants.

*Patrick & Gordon,* for the appellees.

KEITH, P., delivered the opinion of the court.

O. S. Strole and others, claiming as devisees under the will of Rebecca Armentrout, filed their bill in the Circuit Court of Augusta county, in which they allege that Jacob H. Armentrout purchased of Emanuel Miller a farm containing twenty-five acres, which was conveyed to him by deed of October 10, 1868; that Rebecca F. Armentrout, wife of Jacob, lived and died in the belief that this property stood in her name, and was hers absolutely; that it was bought with her money, derived from her father's estate, and that her right to control and dispose of it absolutely was never denied by her husband, and that, although standing in his name, it was the property of his wife, Rebecca, and passed to the plaintiffs under her will, as though the deed had been taken in her name. They pray that it may be decreed to belong to her, and for general relief.

This bill was taken for confessed as to all the defendants, and a decree was entered directing the master commissioner to report the real estate in Augusta county standing in the name of Jacob H. Armentrout and the interest of his widow in said estate. The commissioner reported that there was a resulting trust in favor of Rebecca F. Armentrout in the twenty-five acres conveyed to her husband by deed from Emanuel Miller on the 10th of October, 1868. This report was confirmed by decree of the Circuit Court, and that decree is now before us for review.

Appellees contend, at the outset, that appellants have no standing in court, because "a defendant to a bill in chancery is not to be heard unless he sets up a defence by making an issue. While the conscience of the chancellor must be satisfied as to the truth of the allegations of the bill through testimony adduced by the complainant, when that is done, the rights of the defendant are at an end upon a final decree."

It is true, there was no issue made in this case by demurrer,

plea, or answer, but the averments of the bill do not warrant, and the court did not render a decree in favor of appellees upon the bill as taken for confessed. Witnesses were examined on behalf of plaintiff, and cross-examined by defendants, and the report of the commissioner when returned to the court was excepted to by the defendants, so that the proceedings before us were not as upon a bill taken for confessed.

Not having demurred, pleaded, or answered, appellants' contention is presented to us in its least favorable aspect, for it stands upon the case made by plaintiffs in their pleadings and proof, but appellants are not thereby precluded from showing that those pleadings and proof are insufficient to warrant the decree rendered.

"If the bill stood wholly confessed, the plaintiff would not be entitled to a decree as of course according to its prayer, but only to such decree as would be proper upon the statements of the bill assumed to be true." *Thompson* v. *Wooster*, 114 U. S. 104.

The bill in this case on its face shows that the money which Jacob H. Armentrout paid Emanuel Miller, and for which he received a deed on October 10, 1868, was derived by him from his wife's father's estate. It is not averred that it was her equitable separate estate, and as the transaction was long prior to the creation of statutory separate estates—the legislation in that direction first appearing in the Acts of 1876-'7—the presumption is that the money when received by him was his by virtue of his marital rights. It is not averred that there was any agreement, promise, or understanding which in any degree diminished his interest in, or impressed any trust or duty upon, it with respect to its investment by him. The facts seem to contradict any such hypothesis. It appears from the bill that he received the money from her father; that with it he purchased the land, and caused a deed for it to be made to himself. That she lived and died in the belief that it stood in her name, and that her right to control and dispose of it was not controverted by her husband are immaterial to the issue.

If the bill were sufficient, the evidence is wholly inadequate to establish either an express parol trust or a resulting trust. The testimony upon the subject is in substance embraced in a question and answer which appear in the deposition of Rev. Samuel Driver:

"Q. Please state whether or not, on other occasions preceding his last illness, Mr. Armentrout told you that this was his wife's property, and bought with her money?

"Ans. Yes, he spoke to me several times; I might say, half a dozen times, perhaps several times. He told me that that was her property, and paid for with her money. The general business was done through her."

Other witnesses, it is true, state the same thing in varying forms, but as the appellants filed no plea or answer, and took no evidence in their own behalf, one witness on behalf of plaintiffs is as good as a multitude if he deposes to facts which prove the case. The facts and circumstances shown in evidence by the appellees are none of them coincident with the transaction by which the title to the land in controversy was acquired. They refer to statements and declarations made long after, which are entirely consistent with the record title. That the money paid was derived from the wife's father, and was her money until received by the husband is true, and in a popular sense a husband would naturally speak of it, even after the event, as the wife's money; but as the law then stood, money received by the husband without any undertaking with respect to it upon his part, became his to all intents, and property purchased with it was his, and there was no trust resulting to the wife with respect to it. The self-servient declarations of Mrs. Armentrout, whether contained in her will, or made during her lifetime, are of no effect. The propositions we have stated are abundantly sustained by authority.

"Previous to the Married Woman's Act (April 4, 1877), where a woman having money not settled to her separate use.

marries, and the husband purchases with it real estate, and takes the conveyance in his own name, no trust results in the wife's favor." *Hannon* v. *Hounihan,* 85 Va. 429, 435; *Grayson* v. *George,* 85 Va. 908.

"If a husband receives and applies the funds, whether money, goods or chattels, or collects choses in action, with the wife's privity and consent, and without an agreement or promise to repay or restore it, no legal obligation rests on the husband to restore it, no right of action accrues to her, and to that extent her rights are extinct." *Throckmorton* v. *Throckmorton,* 91 Va. 46-7.

The general doctrine of resulting trusts is well stated in Pomeroy's Equity Jurisprudence, section 1087, as follows:

"In pursuance of the ancient equitable principle that the beneficial estate follows the consideration, and attaches to the party from whom it comes, the doctrine is settled in England and a great majority of the American States that, where property is purchased and conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust results at once in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him. In order that this effect may be produced, however, it is absolutely indispensable that the payment shall be actually made by the beneficiary, or that an absolute obligation should be incurred by him, as a part of the original transaction of purchase, at or before the time of the conveyance; no subsequent or entirely independent conduct, intervention, or payment on his part, would raise any resulting trust."

We are of opinion that the pleadings and proof do not establish an implied trust in favor of Mrs. Rebecca Armentrout.

It is not necessary, we think, to discuss the controverted question as to whether a trust in lands may be created by a parol declaration. We prefer to leave that question where it was placed by Judge Moncure in *Sprinkle* v. *Hayworth,* 26 Gratt.

384, and by Burks, J., in *Borst* v. *Nalle*, 28 Gratt. 423. If a trust could be created by parol, the declaration should be unequivocal and explicit, and established by clear and convincing testimony. As we have said, the strongest statement in the evidence is that made by the Rev. Mr. Driver, who said: "He told me that that was her property, and paid for with her money."

Another witness says: "He told me it came by his wife— this money; that he had lost his money that he formerly had in purchasing land in the West, and he had lost some money by his brother George. He spoke as though it was a great thing his wife had this money to fall back on. I never knew of anything at the time how this deed was made. From the way he talked about it to me, I thought it was made to his wife, and from the way he talked about it, I thought it was his wife's property."

Granting that a trust may be created by parol, to establish such a trust upon such declarations would be productive of great mischief.

We are of opinion that the decree of the Circuit Court should be reversed, and the bill dismissed with costs to the appellants.

*Reversed.*