# Richmond

## ADA SALYER, ETC., ET AL. v. IRA SALYER.

December 1, 1975.

Record No. 740720.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Jerry R. Tiller* (*G. G. Popp; Popp & Tiller*, on brief), for appellants.

*Benjamin F. Sutherland* (*T. J. Bondurant; Bondurant & Schelin*, on brief), for appellee.

COMPTON, J., delivered the opinion of the court.

In 1921, a parcel of farm land in Russell County containing 88.5 acres was conveyed to Carless H. Salyer and Ira Salyer, his brother. The title to that property is the subject of this litigation between Carless' heirs at law and Ira. The issue we decide is whether Ira was the beneficiary of a resulting trust in the property. We conclude that he was and affirm.

In 1971, Carless' widow, Ada (now Ada Salyer Mitchell), and the five children of her marriage to Carless, the plaintiffs below, filed

this suit against Ira, the defendant below, contending they were joint owners with him of the foregoing tract of land and seeking its partition in one of the modes prescribed by law. *See* Code §§ 8-690, *et seq.* The plaintiffs alleged they were the sole heirs at law of Carless, who died in 1929, and that Carless and the defendant acquired title to the property by the 1921 deed.

In his answer, Ira denied that Carless was the owner of an undivided interest in the property. He claimed to be "the equitable owner of the entire fee simple title" and asserted that Carless was merely the holder of the bare legal title to the tract as trustee for Ira. He averred that the plaintiffs should be denied partition because a resulting trust, of which he was the beneficiary, had arisen. Alternatively, he alleged he had acquired title to the tract by adverse possession.

The cause was referred to a commissioner in chancery who, after considering evidence heard *ore tenus* in January and April of 1972 and depositions taken in July of 1972, reported that partition should be refused. He found that the plaintiffs' suit was barred by laches and that Ira had acquired title to the property by adverse possession.

Exceptions filed by the plaintiffs to the commissioner's report were overruled by the chancellor. In the final decree, the report was confirmed, the plaintiffs' prayer for partition was denied, on the basis that a trust in favor of Ira had been created and on the theory of adverse possession, and a special commissioner was appointed to convey the plaintiffs' interest in the tract to Ira. We granted the plaintiffs an appeal from this final decree entered in April 1974.

The assignments of error attack the correctness of the chancellor's decision as it relates to both the trust theory and the doctrine of adverse possession, but our view of the suit requires discussion of only the former subject, and the evidence which bears on that topic.

Although proof of the plaintiffs' property interest in the land was the initial issue raised by the pleadings, the broad question with which we are concerned is whether the defendant established a resulting trust in the property by clear and convincing evidence. *See Kellow v. Bumgardner,* 196 Va. 247, 256, 83 S.E.2d 391, 396 (1954).

The defendant's testimony, given when he was 78 years of age, received the necessary corroboration, Code § 8-286,[1] from his witnesses

---

[1] "§ 8-286. **Corroboration required and evidence receivable when one party incapable of testifying.**—In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party

and the county land records. It established that prior to April 13, 1921, Ira and Carless, who both "farmed and logged" at the time, decided to purchase two farms, a mile apart, in Russell County; one (Tract A) is the subject of this suit and the other (Tract B) was a parcel containing 65.5 acres. They agreed that the farms would be owned separately but that both of their names would appear on the deeds because "[i]t made it better to get a loan by having both names on each deed." They planned to cooperate by signing the necessary documents to enable each of them to finance the purchase of his individual parcel. Carless suggested, and Ira agreed, that Tract B, the more desirable property, would be bought "for" Carless and that Tract A would be bought "for" Ira. They also agreed that when the debts on the respective farms had been fully paid, Carless would transfer his interest in Tract A to Ira and Ira would do likewise with reference to Tract B.

Thereafter, Tract A was conveyed to "Ira Salyer and C. H. Salyer" by deed dated April 13, 1921, reciting a consideration of $4602, and Tract B was conveyed to "Ira Salyer and Carless Salyer" by deed dated December 2, 1921, reciting a $4000 purchase price.

Both deeds were duly executed and recorded. The deed to Tract A provided that the consideration would be paid in three equal annual installments, the first payment being due one year after the date of the deed. It further recited that this obligation was evidenced by negotiable promissory notes made by the brothers payable to the grantors and that a vendor's lien was specifically retained on the property to secure the payments.

Although the deed to Tract B recited that the entire consideration was paid in cash at the time of the conveyance, there is credible evidence that the brothers each paid a portion of a down payment of $500[2] when the legal title was transferred and that the balance of the purchase price was to be paid with funds later borrowed, using Tract B as security.

---

founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

[2] The plaintiffs maintain that one piece of Ira's testimony proves that this joint down payment was applied to Tract A. But, in the statement referred to, Ira specified that the down payment was made "when we bought the first place", and he had previously referred to Tract B as the "first one we bought." Furthermore, the deed to Tract A specifically recites, consistent with the other evidence, that payment of the full consideration for that parcel was deferred, as previously noted.

In accordance with their agreement, Ira and his family moved to Tract A, occupying it exclusively and living in "a little log barn" on the tract, and Carless, with his family, moved to Tract B, occupying it exclusively and living in "a good house" on that property. Each farmed his separate parcel, although they "worked together" using farm machinery and equipment owned individually by Ira. A first cousin of the brothers, who drove a pulpwood truck for them, testified that Carless always claimed ownership of Tract B but he "never heard him refer to [Tract A]."

Apparently, the full cash payments to the grantors of Tract A were not made as specified in the 1921 deed because, in 1923, a $2400 loan was obtained from the Federal Land Bank of Baltimore. In connection with that transaction, the brothers and their wives executed a note and deed of trust encumbering Tract A in favor of the bank. The balance of the purchase price of Tract A was then paid to the grantors with these funds. The evidence establishes that eventually the entire consideration for the purchase of Tract A was paid by Ira individually.[3]

The balance of the purchase price on Tract B was curtailed partially during the period from 1921 to 1929 by funds borrowed from various individuals and the Federal Land Bank, the loans being evidenced by notes and secured by encumbrances on Tract B, which were also executed by the brothers and their wives.

In 1929 Carless was killed in a mining accident. Thereafter, Ada used the proceeds from insurance on Carless' life to pay some of the outstanding debts on Tract B. When she was unable to pay the balance due the Federal Land Bank, it foreclosed in 1931. The property was sold at public auction and purchased by Ada for $302.45, as the highest bidder, free and clear of all liens. At the same time, Ira and his wife, by quitclaim deed, released all of their right, title and interest in Tract B to Ada and her children. Thereafter, the plaintiffs remained in exclusive possession of Tract B until it was sold by them in 1945.

Subsequent to Carless' death, Ira continued to make regular installment payments to the Federal Land Bank on the balance due on the purchase price of Tract A until this obligation was discharged in 1962. In 1963, Ira realized the property was still titled in Carless' name. He testified he then asked the plaintiffs to execute a deed releasing their

---

[3]Ira made two ambiguous statements during his testimony which tended to indicate that Carless, prior to his death in 1929, paid some part of the consideration for Tract A, but he also made at least five positive statements in answer to unambiguous questions, during other portions of his examination, that he paid the entire amount.

interest in Tract A to him in accordance with his agreement with Carless, but they each refused, after Ada and several of her children initially indicated assent.

During the period from 1921 to 1972, Ira maintained exclusive possession of Tract A; he farmed the land; he made improvements on the property; he paid for repairs to the premises. In addition, there was evidence that Ira paid the real estate taxes on the property, probably during the entire period, but certainly "since '28." The property had been assessed, according to the evidence, in Ira's individual name since "shortly" after Carless' death.

The defendant's evidence further showed that no claim of ownership was made by any of the plaintiffs at any time before 1963 and no action with reference to Tract A was taken by them thereafter, until this suit was filed in 1971.

The evidence offered by the plaintiffs, several of whom had lived in the vicinity of the property all their lives, included the testimony of Ada, given when she was 73 years of age, and the testimony of three of the children of her marriage to Carless. This testimony raised only minor conflicts in the evidence. For example, Ada denied having any knowledge before 1963 of the arrangement between Carless and Ira, and two of her sons testified they did not agree in 1963 to sign the deed when asked by Ira. All of the plaintiffs who testified admitted, however, that no claim by any of them to any interest in the tract in question had been made prior to 1963. The plaintiffs did not offer any evidence to show that any payment was made by any of them on account of the purchase price for the property in question.

The issue, then, is whether a resulting trust has been established to controvert the duly executed and recorded deed. We hold that such has been proven, and by the required clear and convincing evidence.[4]

Settled general principles must be reviewed. *Indirect* trusts "arise from the evident *intention* of the parties, or the *nature of the transaction,* although without any *express declaration of trust.*" 1 *Minor on Real Property* § 451 at 603 (2d ed. F. Ribble 1928). One class of such trusts is a resulting trust, which is enforceable in equity and may arise without a writing. *Id.* at 603-04. Resulting trusts "include such in-

---

[4]We have recently defined clear and convincing evidence as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal.*" *Fred C. Walker Agency, Inc.* v. *Lucas,* 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975).

terests as arise from *presumed intention*, which allots a beneficial ownership to some party other than him in whom is vested the legal title." *Id.* at 604.

More specifically, a resulting trust arises when one person pays for property, or assumes payment of the purchase price money or a part thereof, but has the legal title conveyed to another with no express mention of a trust on the face of the conveyance. "[T]he person named as grantee in the conveyance is a trustee for the party from whom the consideration proceeded. . . . However, the so-called purchaser must have paid the purchase money as his own and not as an agent of the title holder, nor as a loan or gift to the latter." *Kellow,* *supra,* 196 Va. at 254, 83 S.E.2d at 395. It is necessary that the beneficiary "prior to or at the time of the purchase should pay or assume an obligation to pay the purchase price. It is not enough that subsequent to the purchase he pays or agrees to pay the purchase price." 5 A. Scott, *The Law of Trusts* § 457 at 3394-95 (3d ed. 1967). *See* *Jesser* v. *Armentrout,* 100 Va. 666, 673, 42 S.E. 681, 682 (1902); *Minor, op.cit.,* § 459 at 613.

But "[t]he fact that the payor takes title to property in the name of himself and another jointly is an indication of an intention of the payor to make a beneficial gift of an undivided interest in the property to the other person; *and in the absence of evidence of a different intention of the payor,* the other person does not hold his interest upon a resulting trust for the payor." Restatement (Second) of Trusts § 441, comment e (1959) (emphasis added). *See Scott, op.cit.,* § 441.4 at 3332.

Accordingly, applying the foregoing principles to the facts of this case, the crucial inquiry must be directed to Ira's intention, and the agreement of the parties, as it existed prior to or at the time of conveyance of Tract A. A thorough examination of all the testimony and the many exhibits in the record convinces us that Ira's intention at that time—as well as Carless'—in accordance with the agreement was, first, that Ira would own the beneficial interest in the 88.5 acre tract and, second, that he was obligated to pay for the property. Not only does the conduct of the brothers prior to the conveyance, as revealed by the record, support that conclusion, but the conduct of both thereafter, as shown by the evidence, is consistent in every particular with such a finding.

In the first place, the two farms were purchased at approximately the same time, as agreed. The plaintiffs lay great emphasis on the fact

that the deed to Tract A was *dated* about eight months before the deed to Tract B. They argue that this evidences an intention on the part of the brothers, in April 1921, to own Tract A jointly and shows that they did not contemplate purchasing additional property. This contention is contradicted by the clear evidence. The record shows that the deed to Tract A was acknowledged August 17, 1921, and, according to the abstract of title prepared in 1923 for the Federal Land Bank, it was recorded October 4, 1921. The record further indicates that the deed to Tract B was acknowledged December 8, 1921, and recorded January 6, 1922. Therefore, the conveyances apparently took place three to four months apart. Furthermore, there is no positive evidence that the purchase of Tract B was not contemplated before Tract A was conveyed. All of the credible evidence is to the contrary and is to the effect that the conveyances were part of the same transaction between the brothers pursuant to one agreement.

Moreover, both families immediately moved to the separate tracts and each thereafter exercised dominion over the respective parcels exclusively, as agreed—Carless' family for at least 23 years and Ira for over 50 years.

Furthermore, as we have demonstrated, Ira actually paid the entire consideration for Tract A, as agreed, without any demand being made on Carless or Ada for contribution, finally discharging the last debt on the property in 1962. In addition, and consistent with the agreement, Ira promptly quitclaimed his interest in Tract B to Carless' heirs in 1931, when the debt on that property was paid. As further corroboration of the agreement and the intention of the parties, the evidence shows that while Ira exercised complete dominion over Tract A, neither Carless nor any of his heirs claimed any ownership in that parcel until 1963, when Ira called the agreement to the attention of Carless' heirs.

There is no evidence, except for the manner in which the deed was drawn, which would lead to the conclusion that Ira intended to make a gift to Carless of an undivided interest in Tract A. There is no evidence that Ira was indebted to Carless so that his payment of the consideration could be presumed a discharge of a pre-existing debt, as was the case in *Kellow, supra.* Ira was under no legal obligation to provide support for Carless. *See Smith* v. *Smith,* 200 Va. 77, 104 S.E.2d 17 (1958). There is no evidence that Ira was Carless' agent.

In summary, we hold that this evidence, in a clear and convincing manner, controverts the deed in question and we conclude that a resulting trust in favor of Ira has been established in the 88.5 acre tract.

Accordingly, the decree of the trial court will be affirmed and the cause will be remanded so that a deed can be prepared, executed and delivered which will convey to the defendant the interest of the plaintiffs in the tract in question.

*Affirmed and remanded.*