# CIRCUIT COURT OF THE CITY OF RICHMOND

Robert A. Steele

v.

Karen A. Batalo

June 3, 2003

Case No. HS-1132-4

BY JUDGE RANDALL G. JOHNSON

In this chancery action, Robert Steele asks the court to impose a resulting or constructive trust on a house and lot in Richmond. Steele also asks the court to find that the defendant, Karen Batalo, has been "fraudulently unjustly enriched" by the actions about which Steele complains. The case is currently before the court on Batalo's demurrer.

The allegations of the amended bill of complaint, which on demurrer will be taken as true, are that in May 1999, Steele and Batalo purchased together the real property in question. They agreed that title to the property would be in Batalo's name only, but that it would belong to "each of them jointly as co-owners." Steele assumed payment for part of the purchase money prior to its purchase through a commitment he made to Batalo to provide fifty percent of the down payment. The parties further agreed that they would each be responsible for fifty percent of the costs and expenses associated with the property. Steele followed through on his commitment by providing fifty percent of the down payment prior to purchase and by making fifty percent of the mortgage, maintenance, and utilities payments associated with the property after purchase. The parties lived together at the property from the time of its purchase until May 2001, when Batalo unilaterally changed the locks. She has excluded Steele from the property since then.

Batalo's demurrer is based on the holding in *Tiller v. Owen*, 243 Va. 176, 413 S.E.2d 51 (1992). In that case, Ralph Owen brought an action against Vivian Tiller to have the court impose a resulting trust on property. The evidence showed that the parties began dating in 1985 and began living together in 1986. In 1987, Tiller purchased, in her name only, the subject property. She made the loan application and obtained the loan herself. She was also the only party obligated on the deed of trust on the property. Owen gave Tiller two checks totaling $23,000 for the down payment on the house. Tiller placed the checks in her personal checking account and wrote the check for the down payment out of that account. Owen also gave Tiller sufficient money to make each of the mortgage payments until their relationship ended, at which time Tiller moved out of the house. Owen remained in the house and began making the mortgage payments directly. The trial court ruled that Owen was entitled to a lien on the property in the amount of $19,315, which was the amount of the down payment minus certain money that Owen owed Tiller. The Supreme Court reversed.

First, the Supreme Court noted that the trial court gave no basis for its ruling; that is, whether it was basing its ruling on a resulting trust or something else. The Supreme Court also noted that the only basis for relief set out in the bill of complaint was a resulting trust. The Court then said:

> A resulting trust is an indirect trust which arises from the intention of the parties or the nature of the transaction. It is not dependent on any express declaration of trust. *Salyer v. Salyer*, 216 Va. 521, 525, 219 S.E.2d 889, 893 (1975). In order for a resulting trust to arise, the would-be beneficiary must pay for the property, or assume payment of all or part of the purchase money prior to or at the time of purchase, and have legal title conveyed to another without any mention of a trust in the conveyance. *Leonard v. Counts*, 221 Va. 582, 588, 272 S.E.2d 190, 194 (1980). In addition, he must have paid the purchase money as his own, and not as an agent of the title holder, nor as a loan to the latter. *Salyer*, 216 Va. at 526, 219 S.E.2d at 893. Finally, in instances where the would-be beneficiary has obligated himself to pay purchase money prior to or at the time of purchase, he must have upheld this commitment. *Leonard*, 221 Va. at 588, 272 S.E.2d at 194-95.

> In the case presented here, Owen did not obligate himself to purchase all or part of the property in question. He did not sign the sales contract or become obligated on the mortgage. Further, he signed no other documents binding him to pay all or part of the purchase money. Thus, when he delivered the checks to Tiller, both for the down payment and the monthly mortgage payments, it was not done in satisfaction of any obligation he had with regard to the purchase of the property. For this reason, as a matter of law, a resulting trust did not arise.

243 Va. at 180.

Batalo argues that the above language, particularly the language that the would-be beneficiary must pay for "the property, or assume payment of all or part of the purchase money," gives the would-be beneficiary two choices: he or she must either (1) pay for the *entire* property at the time of purchase, or (2) commit prior to purchase to pay all or part of the purchase money after purchase. Batalo also argues that the commitment must be made to someone other than the title holder. The court disagrees.

With regard to the need to pay the entire purchase price, Batalo's argument ignores the language in the paragraph immediately following the language she cites. In holding that a resulting trust was not appropriate, the Supreme Court specifically noted that Owen "did not obligate himself to purchase all *or part* of the property in question." If the only way a resulting trust can be created is for the would-be beneficiary to pay for *all* of the property, that language makes no sense.

Even more telling is the case of *Morris v. Morris*, 248 Va. 590, 449 S.E.2d 816 (1994), which was decided almost three years after *Tiller*, and which cites *Tiller* with approval. That case also cites with approval *Kellow v. Bumgardner*, 196 Va. 247, 83 S.E.2d 391 (1954), in which the Court said:

> The existence of a resulting trust thus depends upon an equitable presumption of intention, based upon the natural precept that one who advances the purchase money for real property is entitled to its benefits. Therefore, after it has been shown that payment of all *or a part* of the purchase price for property has been paid by one person and title thereto has been placed in the name of another, the factor which will determine whether the title is to be impressed with a trust in favor of the

payor is the intention of the party providing the purchase money.

196 Va. at 255 (emphasis added).

Also, in *Salyer v. Salyer*, 216 Va. 521, 219 S.E.2d 889 (1975), one of the cases cited by the Supreme Court in the portion of *Tiller* relied on by Batalo and quoted above, the Court cited with approval 1 *Minor on Real Property* § 459 at 613 (2d ed. F. Ribble 1928). On page 612 of that treatise, it is said:

> While, to raise [a resulting] trust, it is not necessary that the *whole* purchase price be paid by another than the one in whom the title is taken, it is necessary that some payment be really, and not merely formally, made by another.

Emphasis added.

The court also rejects Batalo's argument that a resulting trust cannot be established in the case at bar because Steele's commitment to pay fifty percent of the down payment and the other costs associated with the property was not made to anyone other than Batalo. While the Supreme Court in *Tiller* did note that Owen did not sign the sales contract, or become obligated on the mortgage, or sign any other paper binding him to pay all or part of the purchase money, the Court did not hold that such action was necessary to establish a resulting trust. Rather, Owen's failure to do any of those things was simply evidence that no commitment was made at all. In fact, while this court has been unable to find a Virginia case that specifically says that the commitment must be made to someone other than the title holder, or that the commitment need not be made to someone other than the title holder, a closer look at *Tiller* answers the question. In *Leonard v. Counts*, 221 Va. 582, 272 S.E.2d 190 (1980), the other case relied on by the Supreme Court in the portion of *Tiller* cited by Batalo, the court cited A. Scott, *The Law of Trusts*, §§ 456.2 and 457 at 3393-95 (3d ed. 1967), and Restatement (Second) of Trusts § 456e, Illus. 6 (1957), for the proposition that "[a]lthough a subsequent payment of, or promise to pay, the purchase price will not create a resulting trust, such a trust arises when prior to the purchase one person binds himself to pay purchase money and stands behind his commitment, but title is conveyed to another." 221 Va. at 588. The referenced portions of Scott and the Restatement are fatal to Batalo's argument.

Scott sets out several examples of resulting trusts on the pages cited in *Leonard*. Typical is the following:

> A purchases land making a down payment in cash and has the land transferred to B, a straw man, who gives a purchase-money mortgage for the balance. In such a case it is understood between A and B, *even if it is not expressly so agreed*, that A will exonerate B from liability on the note. B, therefore, holds the land upon a resulting trust for A, the real purchaser.

Emphasis added.

Another example on the pages cited provides:

> If the property is purchased upon the credit of B, but there was at the time of the purchase an oral contract *between A and B* whereby A agreed to contribute in part to the payment of B's obligation to the vendor, a resulting trust pro tanto arises.

Emphasis added.

In neither example is there any mention of a commitment being made or communicated to a third party. The other examples set out in Scott are not to the contrary.

The Fourth Edition of Scott, published after *Leonard*, is just as clear. Section 456.2 now begins by saying:

> A resulting trust may arise on the purchase of land on credit even though the grantee gives his own note for the purchase price, provided that the real purchaser agreed *with the grantee* that he would pay the note.

A. Scott & W. Frakler, *The Law of Trusts,* §§ 456.2 at 273 (4th ed. 1989) (emphasis added).

The same is true with regard to the Restatement (Second) of Trusts, the other treatise cited in the portion of *Leonard* quoted above. Illustration 6 of the Restatement, which is the part of the treatise cited, is as follows:

> X is the owner of Blackacre. A and B purchase Blackacre from X for $10,000, B giving his note to X for that amount. At the time of the purchase it is orally agreed *between A and B* that A

will contribute $5000 to the payment of the note. At the direction of A and B, X conveys Blackacre to B. In the absence of evidence of a different intention, B holds Blackacre upon a resulting trust for A as to one-half.

Restatement at 430 (emphasis added).

The text to which the illustration applies makes it even clearer that the commitment does not have to be made to anyone else:

> Where the transferee undertakes an obligation to the vendor to pay the purchase price, but another person at the time of the purchase agrees *with the transferee* to contribute part to the payment of the transferee's obligation to the vendor, a resulting trust arises in favor of the other in such proportion as the part which he agreed to pay bears to the total purchase price.

*Id.* (emphasis added).

The above passages leave no doubt that the obligation or commitment mentioned in *Tiller* need only be made to the title holder in order to create a resulting trust. Thus, the fact that Steele's amended bill of complaint does not allege that his commitment to pay fifty percent of the costs associated with the property was made to anyone other than Batalo does not defeat his claim. Under the holdings of *Tiller* and *Leonard,* dependent as they are on the treatises just discussed, Steele must be allowed to show that a commitment was, in fact, made. If he can do so, and if he can prove the other elements of a resulting trust, a resulting trust will be imposed. If he cannot meet his burden of proof, a resulting trust will not be imposed. Batalo's demurrer to the resulting trust claim will be overruled.

The court will also overrule Batalo's demurrer to Steele's claim for a constructive trust. While *Tiller* did not address constructive trusts, no such claim having been made in that case, *Leonard* did. In *Leonard,* the Supreme Court cited the following passage from *Minor on Real Property*:

> Constructive trusts arise, *independently of the intention* of the parties, *by construction of law;* being *fastened upon the conscience* of him who has the legal estate, in order to prevent what otherwise *would be a fraud.* They occur not only where property has been acquired by fraud or improper means, but also

where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit.

1 *Minor on Real Property* § 462 at 616 (2d ed. Ribble 1928) (emphasis by *Minor*).

The Court then discussed its earlier case of *Horne v. Holley*, 167 Va. 234, 188 S.E. 169 (1936), in which there was an oral agreement between Horne and Holley to make a joint purchase of certain assets, including real estate. Horne, however, purchased the assets in the name of a corporation of which he was president, a director, and majority stockholder. The Court affirmed the ruling of the trial court that Horne and the corporation were constructive trustees holding the property for the joint benefit of Horne and Holley. Except that Batalo purchased the property in the case at bar herself and not in the name of a corporation, that is precisely what is alleged to have happened here. Steele and Batalo agreed to purchase the property together and to own it jointly. Batalo purchased the property in her name only. Steele will be given a chance to prove that a constructive trust exists.

With regard to Steele's claim of "fraudulent unjust enrichment," this court is of the opinion that while unjust enrichment is recognized in Virginia as a rationale for implying a contract or trust, *Webb v. Webb*, 37 Va. Cir. 274 (1995), it is not a cause of action by itself. Judge Hughes of this court has expressly so held. *Berry v. Clark*, 42 Va. Cir. 1 (1996). While there are many Supreme Court cases which involve claims of unjust enrichment, this court has been unable to find one that specifically recognizes unjust enrichment *as a cause of action*. At least two cases contain language that this court feels supports its conclusion that no such cause of action exists in Virginia. In *Reid v. Boyle*, 259 Va. 356, 527 S.E.2d 137 (2000), the Court noted that the plaintiff had pleaded causes of action for "breach of contract, 'unjust enrichment,' and fraud." 259 Va. at 360. The Court did not explain why it placed quotation marks around "unjust enrichment." It did note, however, that in light of its holding on other issues in the case, it did not have to consider the unjust enrichment claim. *Id.* at 371.

In *Vega v. Chattan Assocs.*, 246 Va. 196, 435 S.E.2d 142 (1993), the Court included the following footnote:

The defendants make the gratuitous concession on brief that while Chattan cannot enforce the terms of the agreement

> through a breach of contract action, it "may have a cause of action in unjust enrichment which it did not plead in its Motion for Judgment." Because we find that Chattan may enforce the agreement through a breach of contract action, we need not comment on the defendants' concession.

246 Va. at 198, n. 2.

In the case at bar, if Steele is able to prove a resulting or constructive trust, he will be granted appropriate relief; that is, the trust will be enforced. If he cannot prove a resulting or constructive trust, he will not be granted relief, on a theory of unjust enrichment or otherwise. Batalo's demurrer to the unjust enrichment count will be sustained.

Finally, the court realizes that in making her arguments in support of her demurrer, Batalo also relies on the statute of frauds' requirement that contracts for the sale of real estate be in writing. Virginia Code § 11-2(6). The whole premise of resulting and constructive trusts, however, is that there is no writing. If there were a writing, no trust would have to be imposed. Such trusts are exceptions to the writing requirement. *See Salyer, supra,* at 525.