COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


LINDA FAYE GREEN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0396-06-1                      JUDGE JAMES W. HALEY, JR.
                                                        NOVEMBER 7, 2006
CITY OF HAMPTON DEPARTMENT
  OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Wilford Taylor, Jr., Judge

              Fred C. Hardwick, II (Eusner & Hardwick, P.C., on brief), for
              appellant.

              (Rachel Allen, Assistant City Attorney; Robert Boester, Guardian *ad
              litem* for the child; Hawkins, Burcher & Boester, P.C., on brief), for
              appellee.  Appellee and Guardian *ad litem* submitting on brief.


       Linda Faye Green ("mother") appeals the decision of the trial court terminating her residual

parental rights to her child, B.M.G., pursuant to Code § 16.1-283(C)(2).  On appeal, mother argues

that the trial court erred in (1) denying her motion to recuse where the presiding judge heard

substantially the same evidence in a prior appeal; and (2) terminating her residual parental rights

where the evidence is insufficient to prove the requirements of the statute by clear and convincing

evidence.  We affirm the decision of the trial court.

                                    Factual Background

       In 1998, the Hampton Department of Social Services ("Department") received a report that

mother was living in poor conditions with her four children, including B.M.G.  At that time, the

family was staying with mother's boyfriend in an "unsanitary, unhealthy, unsafe situation[]."  The

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

children also had head lice, and they were not attending school. The Department provided in-home services to mother from October 1998 to January 1999. During that time, the Department cleaned and debugged the home. Mother also continued to receive treatment for clinical depression from the Hampton Roads Clinic. In this period, however, the Department observed that mother's parenting skills were adversely affected because she did not stay on her medication. Mother refused additional services from the Department.

In 2003, the Department received phone calls from community members regarding drug use and increased traffic in and out of mother's home. In August 2003, the Department discovered mother living with B.M.G. and her sister on an abandoned scavenge boat. The boat did not have running water, and electricity was supplied via an extension cord. The boat had sunk previously, and the water had been "pumped out" to refloat the vessel. Child Protective Services worker Ann Shreve testified that the Department was concerned about the family's "precarious and dangerous" living conditions and because mother was not utilizing the services available through their agency. The Department filed a petition seeking custody of the children. On September 2, 2003, the Department received custody of B.M.G.

The Department developed a foster care plan that assigned several objectives for mother to meet before B.M.G. would be returned to mother's custody. Those objectives required, among other stated goals, that mother demonstrate financial ability, provide safe and appropriate housing for B.M.G. and that she meet all of B.M.G.'s educational and developmental needs. Additionally, the plan required mother to complete and "follow all recommendations of" individual psychotherapy, a parenting class, and a substance abuse evaluation program. The foster care plan explained that B.M.G. was "an abused and neglected child in that [mother] failed to provide for the care necessary for the normal health, growth and development" of the child.

The plan also stated the foster program's initial goal of "return to parent." The foster care plan was approved on November 4, 2003.

In the year that followed, mother completed several of the Department's recommendations. She attended treatment programs and visitations with B.M.G. The Department revised its initial foster care plan to assist the court in permanency planning for B.M.G. In that revised plan, the Department reiterated its concerns about mother's history of substance abuse, depression, and bipolar disorder. The Department explicitly included a recommendation for mother to complete a 26-week drug abuse program. Mother was also directed to continue with mental health therapy sessions and to remain "100% alcohol and drug abstinent during treatment." With those hesitations in mind, the Department placed B.M.G. in mother's home on a trial basis on November 12, 2004.

B.M.G. remained in mother's home for almost four months. Mother was unemployed during that time. Her only source of income was the social security benefits she received due to her mental health disorder. Mother attended a weekly substance abuse and mental health dual-treatment program at the Hampton Roads Clinic. On December 1, 2004, mother smelled of alcohol. Clinic officials attempted to administer a drug screen, but mother supplied a suspicious urine sample and left the session. A few weeks later, on February 16, 2005, mother returned to the clinic and tested positive for cocaine. As a result, the Department removed B.M.G. from mother's custody on March 1, 2005.

Before B.M.G. was removed, mother also became pregnant and began a relationship with her neighbor, a heavy drinker. On April 15, 2005, therefore, mother began treatment at the Southeastern Family Project, a substance abuse and mental health program for pregnant women.

On July 27, 2005, the trial court changed B.M.G.'s foster care goal to "adoption." Mother appealed the decision. On May 2, 2006, we upheld the trial court, finding that the change to adoption was in B.M.G.'s best interest. Green v. Hampton Dep't of Soc. Servs., 06 Vap UNP

- 3 -

1876051, Rec. No. 1876-05-1 (Va. Ct. App. May 2, 2006). In our decision, we emphasized "Clearly, staying drug and alcohol free was the most significant responsibility required of [mother] by the foster care plan. Moreover, [mother's] pregnancy and her inability to take her medications presented a situation fraught with instability for her child." Id.

On August 11, 2005, mother again tested positive for cocaine. Mother was visibly pregnant at that time. At the trial court proceedings in this case, mother's therapist testified on her behalf. When asked whether mother's desire to have her child back was stronger than her desire to use drugs, the therapist answered, "I think that her habit to fall back on drugs when she was under stress was stronger." Since B.M.G.'s removal, mother has refused additional treatment offered by the Department.

B.M.G. is now fourteen years old. She has lived with the same foster family since her removal on March 1, 2005. B.M.G. calls her foster mother "mom." She has bonded with her new family, and she considers herself at home with them. Her performance in school has improved "considerably" under foster care. B.M.G.'s teachers report she is "very proud of herself" at school.

### Motion to Recuse

First, mother argues that the trial court erred in denying her motion to recuse. Mother contends that the trial judge should have disqualified himself because he heard substantially the same evidence in her prior appeal on the issue of whether to change the foster care goal to "adoption." According to mother, the trial judge abused his discretion when he did not recuse himself. We disagree.

Canon 3(E)(1) of the Canons of Judicial Conduct states, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." The party moving for recusal has the burden of proving bias or prejudice. Commonwealth v.

Jackson, 267 Va. 226, 229, 590 S.E.2d 518, 519-20 (2004). Absent proof of actual bias, the issue of recusal is squarely within the discretion of the trial judge. Id. at 229, 590 S.E.2d at 520.

In considering a motion to recuse, "[a] trial judge must exercise reasonable discretion to determine whether he possesses such bias or prejudice as would deny the defendant a fair trial." Justus v. Commonwealth, 222 Va. 667, 673, 283 S.E.2d 905, 908 (1981); Slayton v. Commonwealth, 185 Va. 371, 376, 38 S.E.2d 485, 488 (1946). The Supreme Court of Virginia has held that merely proving the judge heard the same evidence in a prior proceeding does not dispositively prove bias in the decision. Specifically, in Slayton, the Court explained:

> Frequently . . . a judge is called upon to form and express an opinion upon a matter or issue which may come before him in a subsequent proceeding arising out of the same state of facts. The courts are practically unanimous in the view that neither the forming nor the expression of such a conclusion, under such circumstances, disqualifies a judge in the subsequent matter . . . .

Id. Thus, a trial judge can reasonably consider himself impartial to hear substantially the same evidence in a separate proceeding, absent proof of actual bias or prejudice.

The Supreme Court of Virginia ruled on a set of facts similar to the case at hand in Deahl v. Winchester Dep't of Soc. Servs., 224 Va. 664, 229 S.E.2d 863 (1983). In Deahl, parents argued that the judge abused his discretion in failing to recuse himself when he presided over prior custody proceedings concerning their child. The parents suggested that the trial judge's decision was based on testimony from those earlier proceedings. The Court disagreed, quoting the Eighth Circuit, "'Merely because a trial judge is familiar with a party and his legal difficulties through prior judicial hearings . . . does not automatically or inferentially raise the issue of bias.'" Id. at 672-73, 229 S.E.2d at 867 (quoting Barry v. Sigler, 373 F.2d 835, 836 (8th Cir. 1967)).

In the case at hand, mother charges that the judge should have recused himself from the permanency planning hearing because the evidence he heard was substantially the same as

- 5 -

evidence presented to him at the earlier hearing to change B.M.G.'s foster care plan from "return to parent" to "adoption." See Green, 06 Vap UNP 1876051. Mother points out that the trial judge previously has recused himself on two occasions involving cases in which he heard the same evidence in an earlier parental rights hearing between the parties. Mother contends that this fact raises reasonable question as to his impartiality in this case. We do not find this argument persuasive.

Mother offers no evidence of actual bias or prejudice to require recusal. The decision whether to recuse himself, therefore, is solely within the discretion of the trial court. Here, the evidence in question was presented at two separate hearings involving different statutes and different burdens of proof. In reviewing mother's motion, the trial court explained, "Although some of the evidence may be similar to what I have previously ruled on, I don't remember saying or doing anything that would have given any indication . . . that I could not make a decision based on the law and the evidence." We hold that the trial court did not abuse its discretion in denying mother's motion to recuse.

Sufficiency of the Evidence

Second, mother argues that the court erred in terminating her parental rights where the evidence was insufficient to prove the elements of Code § 16.1-283(C)(2) by clear and convincing evidence. We disagree.

On appeal, we consider the evidence in the light most favorable to the prevailing party below. Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). Where the termination of parental rights is at issue, the child's best interest is always the paramount consideration. Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 827, 433 S.E.2d 500, 503 (1990). Trial courts are given broad discretion to make the decisions necessary to guard and foster the best interests of the child. See Logan v. Fairfax County Dep't of Human Dev.,

13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). When, as here, the trial court's ruling was based on evidence heard *ore tenus*, the decision will be upheld on appeal unless plainly wrong or without evidence to support it. Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

Code § 16.1-283 "embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth.'" Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (quoting Rader v. Montgomery County Dep't of Soc. Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235 (1988)). The statute provides, in pertinent part:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement . . . .

Code § 16.1-283(C)(2). Therefore, before residual parental rights may be terminated, the trial court must find two things by clear and convincing evidence: (1) that termination is in the child's best interest; and (2) that mother failed to correct the conditions that led to or required continuation of B.M.G.'s placement in foster care.

The Supreme Court of Virginia has defined clear and convincing evidence as "'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" Gifford v. Dennis, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985) (quoting Salyer v. Salyer, 216 Va. 521, 525 n.4, 219 S.E.2d 889, 893 n.4 (1975)). Clear and convincing evidence amounts to "more than a mere preponderance," but it does

- 7 -

not mean "clear and *unequivocal*." Id. With this definition in mind, we cannot say that the trial court's decision was plainly wrong or without evidence to support it.

The first determination for the trial court was whether terminating mother's rights was in B.M.G.'s best interest. The Supreme Court of Virginia has recognized a "respect for the natural bond between children and their natural parents." Weaver v. Roanoke Dep't of Human Res., 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980). However, when deciding the best interest of the child, the trial court is instructed to consider many factors, including:

> the age and physical and mental condition of the child . . . the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child . . . the role which each parent has played, and will play in the future, in the upbringing and care of the child . . . and such other factors as are necessary . . . .

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

In the case at hand, the trial court heard testimony from five witnesses, including mother's therapist. Each witness informed the court that mother's parenting skills were affected by her battles with depression, drug addiction, and bipolar disorder. Mother's tendency to fall in and out of addiction mirrored the inconsistent care she provided for B.M.G. Mother's own therapist confirmed that mother's addictions overwhelmed her parenting skills and ability to provide appropriate care for her child. In its analysis, the trial court emphasized B.M.G.'s need for stability, stating, "I can't take the risk for this child to be traumatized any more. She needs permanency." B.M.G. is a fourteen-year-old special education student. She has now been removed from mother's home more than once because of mother's neglect and sustained addictions. B.M.G. calls her foster mother "mom," and her grades have improved under foster care. In view of these factors, the trial court found that terminating mother's parental rights was in the best interest of the child.

As we stated in Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990), "It is clearly not in the best interests of a child to spend a lengthy

period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Here, the record suggests that "the mere passage of time" will not resolve mother's parenting problems. Lecky, 20 Va. App. at 312, 456 S.E.2d at 541. There is no evidence to indicate that mother will overcome her drug addiction in the near future. Mother's history of drug abuse and her lasting mental health disorders demonstrate that she will be unable to improve her parenting skills any time soon.[1] Under these circumstances, we find that "further delay would prolong [B.M.G.'s] familial instability without the promise of a benefit . . . a result clearly contrary to the child's best interests." Id. The record, therefore, contains clear and convincing evidence that the termination of mother's parental rights was in B.M.G.'s best interest.

The second question for the court is whether mother substantially corrected the conditions that led to *or required continuation of* B.M.G.'s placement into foster care. Mother argues that Code § 16.1-283(C)(2) does not require termination because she no longer lives in the abandoned boat that served as the impetus behind B.M.G.'s removal in September 2003. Although the boat was a contributing factor that *led to* B.M.G.'s removal in 2003, it is clear from the foster care plans that many other problems required the *continuation* of foster care. As we noted in our previous, unpublished decision, "Clearly, staying drug and alcohol free was the most significant responsibility required of [mother] by the foster care plan." Green, 06 Vap UNP 1876051. Mother continues to struggle with drug addiction, mental health disorders, poor parenting skills, and general neglect in the care of B.M.G.

---

[1] Moreover, we recently held that the termination of parental rights is justified where a mother's "drug use is pervasive." Butler v. Culpeper County Dep't of Soc. Servs., 48 Va. App. 537, 550, 633 S.E.2d 196, 202 (2006). Like the instant case, the record in Butler indicated that mother "continued to use drugs knowing that she was pregnant," and she "failed to take advantage of the services" provided to her by the Department. Id. Although Butler was decided pursuant to Code § 16.1-283(B), our decision in Butler provides additional support for the termination of mother's parental rights in the case at hand.

The Department created foster care plans with specific recommendations to address these concerns. Mother was instructed to attend individual psychotherapy, a psychiatric evaluation, substance abuse treatment, and a parenting class. Mother could not, however, merely show up to complete the requirements of the plan. Mother had to also "follow all recommendations" of the assigned programs. While B.M.G. was living at home, from November 2004 to March 2005, mother began a relationship with her neighbor, a heavy drinker. Despite mother's history of addiction and neglect, she became pregnant and began using cocaine. Mother was unable to give B.M.G. the care and attention she needs.

After B.M.G. was removed on March 1, 2005, mother did not return to counseling and stopped taking her medication. In August 2005, mother was visibly pregnant and again tested positive for cocaine. On May 6, 2006, we upheld the trial court's decision to change B.M.G.'s foster care goal to "adoption," emphasizing that mother provided "a situation fraught with instability for her child." Green, 06 Vap UNP 1876051. Nonetheless, mother has refused additional treatment available through the Department. Given these facts, it is clear that mother has failed to substantially correct the problems that required B.M.G.'s continued placement in foster care, justifying the termination of mother's parental rights.

## Conclusion

Finding that the trial court did not abuse its discretion in denying mother's motion to recuse and that the evidence was sufficient to meet the clear and convincing standard required by Code § 16.1-283(C)(2), the decision of the trial court is affirmed.

Affirmed.