COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Frank and Beales
Argued at Chesapeake, Virginia


AIMEE BATTLE

v.      Record No. 2836-05-1

CITY OF PORTSMOUTH
 DEPARTMENT OF SOCIAL SERVICES              MEMORANDUM OPINION[*] BY
                                              JUDGE ROBERT P. FRANK
VETO BATTLE                                        MAY 29, 2007

v.      Record No. 0593-06-1

CITY OF PORTSMOUTH
 DEPARTMENT OF SOCIAL SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                    James A. Cales, Jr., Judge

          (Darell Sayer; Ferrell, Sayer & Nicolo, P.C., on brief), for appellant
          Aimee Battle.  Appellant Aimee Battle submitting on brief.

          Anthony J. Johnson (Law Offices of Hampton & Johnson, on briefs),
          for appellant Veto Battle.

          Shelia Riddick, Assistant City Attorney (G. Timothy Oksman, City
          Attorney; T. George Underwood, Jr., Guardian *ad litem* for the
          minor child, on brief), for appellee.


     Appellants, Aimee Battle (mother) and Veto Battle (father), parents of V.B., appeal the trial

court's order terminating their parental rights under Code § 16.1-283(B) and (C).[1]  On appeal, they

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although these two appeals came to us separately, the cases were heard together in the trial court and the issues are interrelated.  We therefore consider them simultaneously.

contend the evidence was not sufficient to terminate their parental rights. For the reasons stated, we affirm the trial court.

BACKGROUND

The appellants are the parents of V.B., born April 6, 2003. On December 8, 2003, City of Portsmouth Department of Social Services (PDSS) removed the child from his parents who were then residing in a homeless shelter.[2] Mother testified she went to work on December 5, leaving V.B. with his father. During that time, mother used illicit drugs and did not want to return to the shelter while under the influence of the drugs. When mother did not return by December 8, the shelter contacted PDSS who then removed the child. At the time of removal, mother's whereabouts were unknown. The shelter manager testified that initially father properly cared for V.B. until the next day, when mother did not return. Father seemed to "decompensate" and had difficulty caring for the child without assistance. The Portsmouth Juvenile & Domestic Relations District Court determined V.B. to be abused and neglected, finding mother left V.B. with father who was "deemed to be an inadequate caretaker." That order was not appealed.

Mother has a long history of drug abuse and psychological illness. She has been in and out of drug treatment since 1995. PDSS referred mother to a number of services, including substance abuse and mental health counseling, individual therapy, parenting classes, and housing and employment programs.

As of the date of the termination hearing in November 2005, some twenty-three months after V.B.'s initial removal, mother still had not completed the substance abuse program. Her attendance was sporadic and inconsistent. She continued to abuse drugs, testing positive on three separate occasions. On September 14, 2005, merely two months prior to the circuit court

---

[2] V.B. was placed in the home of his maternal grandmother, and subsequently removed from that home in September 2004 because his grandmother violated a protective order.

termination hearing, mother tested positive for cocaine. She even abused drugs while pregnant with another child.

Mother failed to maintain consistent employment. While offered visitation for V.B., she visited him only seven times, out of a possible twenty-three visits, since the child's placement in foster care. On several visits, mother was observed to be distant and not properly interacting with the child.

Mother never engaged in mental health treatment because she could not remain drug free, a condition of participation.

Jessica Griffin, Ph.D., a clinical psychologist, completed a parenting capacity evaluation for mother on April 7, 2004, approximately a year and a half prior to the termination hearing. Dr. Griffin characterized mother as "very bright" and opined that mother's strengths are outweighed by her "emotional psychiatric disturbances" and her "very serious substance dependency disorder." Dr. Griffin related a pattern of drug relapses over the years. Mother's prognosis was "guarded to poor," given "her history of relapses and history of non-compliance with services." Dr. Griffin also concluded that mother's "judgment is poor." Dr. Griffin recommended the child not be returned to mother's care at the time of the evaluation. "[S]he should demonstrate compliance for a minimum of one year before the court could determine whether or not to return her children. And we had serious concerns that she will continue to relapse and be non-compliant with services."

Dr. Griffin also performed a parenting capacity evaluation for father in June 2004. The testing was limited because of father's cognitive deficiencies and his inability to read and write. He has been diagnosed as being in the borderline mentally deficient range with a Full IQ of 70. Dr. Griffin concluded that father was unable to independently care for V.B. and that parenting classes would not resolve this deficiency. While father is bonded to V.B., his relationship with V.B. is more "as a child rather than as an adult." His verbal reasoning is so low that it is difficult for father

to retain information. Dr. Griffin noted father has "demonstrated serious impairments in his abilities to think logically and coherently." Dr. Griffin also referred to father's history of marijuana use.

PDSS recommended to father a number of services. Father completed the parenting capacity evaluation, parenting classes, and the Children's Sake Seminar. However, he failed to complete mental health programs, i.e., individual therapy, and substance abuse evaluations. Father's visitation with V.B. was sporadic, attending eight out of a total of twenty-three possible visits. At times father interacted well with his son, yet on one occasion, he fell asleep and left V.B. unattended. No witness testified that father could parent V.B. independently, and father effectively conceded that he could not parent V.B. independent of mother or without help from some other adult.

The trial court terminated the parental rights of both the mother and father. These appeals follow.

ANALYSIS

When addressing matters concerning the custody and care of a child, this Court's paramount consideration is the child's best interests. Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982). "Although 'the rights of parents may not be lightly severed,'" M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003) (quoting Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979)), the trial court is vested with broad discretion in making decisions "necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). "While we are mindful of the principle that 'the termination of [residual] parental rights is a grave, drastic and irreversible action,'" Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 159, 590 S.E.2d 575, 581 (2004) (quoting Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991)), on appeal we presume that the trial court thoroughly weighed all the

- 4 -

evidence, considered the statutory requirements, and made its determination based on the child's best interests, Farley, 9 Va. App. at 329, 387 S.E.2d at 796.

Within this framework, we review the evidence in the light most favorable to the prevailing party below, City of Portsmouth Department of Social Services. Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). We will not disturb a trial court's factual findings on appeal unless plainly wrong or without evidence to support them. Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004). Where the record contains credible evidence in support of the findings made by the trial court, we may not retry the facts or substitute our view of the facts for those of the trial court. Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 4 (1992).

Both mother and father first contend that their parental rights cannot be terminated under Code § 16.1-283(B) since there is no evidence the neglect or abuse suffered by V.B. "presented a serious and substantial threat to his life, health or development . . . ." They argue there was no proof of any harm or abuse to V.B. We reject this argument.

Related to this issue is the parents' contention that PDSS presented insufficient evidence to establish that their parental rights should be terminated. Specifically, mother contends that she made remarkable progress and that nothing in the record suggests she cannot re-establish a relationship with V.B.

> In order to terminate residual parental rights under Code § 16.1-283(B), the court must make "three statutorily required findings" based upon "clear and convincing evidence." Kaywood v. Halifax County Dep't of Social Services, 10 Va. App. 535, 538, 394 S.E.2d 492, 494 (1990); Code § 16.1-283(B). First, the termination of the parents' residual rights must be in the "best interests of the child." Kaywood, 10 Va. App. at 538, 394 S.E.2d at 494 (citing Code § 16.1-283(B)). "Second, the neglect or abuse suffered by the child must present a 'serious and substantial threat to his life, health or development.'" Id. (quoting Code § 16.1-283(B)(1)). And "[t]hird, the court must find that 'it is not reasonably likely that the conditions which resulted in such neglect

- 5 -

or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.'" Id. (citing Code § 16.1-283(B)(2)).  Thus, "Code § 16.1-283(B) speaks prospectively, as to the ability of the parent or parents to 'substantially' remedy, 'within a reasonable period of time,' the conditions which led to the foster care placement." City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003).

Butler v. Culpeper County Dep't of Soc. Servs., 48 Va. App. 537, 547, 633 S.E.2d 196, 201 (2006).

Code § 16.1-283(B)(2) provides three factual situations that constitute *prima facie* evidence of the unlikelihood that the conditions resulting in neglect or abuse can be substantially remedied or corrected within a reasonable time.

The relevant two provisions are:

a.  The parent or parents are suffering from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and state of development.

b.  The parent or parents have habitually abused or are addicted to intoxicating liquors, narcotics or other dangerous drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning.

We find ample evidence to satisfy the statutory mandates of Code § 16.1-283(B).  Mother has a long history of drug abuse and failure to complete substance abuse programs.  She tested positive for cocaine no more than two months prior to the circuit court termination hearing, and she had not completed the substance abuse counseling at the time of the hearing.  Her visitation with V.B. was sporadic, and when she did visit, her interaction with V.B. was inappropriate.

Dr. Griffin, who conducted a parenting capacity evaluation over a year prior to the hearing, predicted mother's relapses and failure to comply.  Dr. Griffin opined that mother

should demonstrate at least one year of compliance with services offered to her before the court made any determination as to her child. Keeping this in mind, Dr. Griffin noted her "serious concerns" that mother would continue to relapse and be non-compliant. Indeed, mother was not compliant or drug-free for one year. Mother did not begin mental health counseling because of her drug abuse. Clearly, mother's habitual abuse of drugs seriously impaired her parenting ability and she did not complete substance abuse treatment.

Mother's overwhelming addiction to illicit drugs was the basis for the abuse and neglect determination by Portsmouth Juvenile & Domestic Relations District Court. This abuse and neglect was "a serious and substantial threat to [V.B.'s] life, health and development." See Code § 16.1-283(B)(1). Mother left V.B. with father during a drug relapse, and remained away from the shelter for a number of days, knowing that father was unable to independently care for the child. She chose her drug habit over the safety of her child.

In opining that father demonstrated "serious impairments in his abilities to think logically and coherently," Dr. Griffin concluded father was unable to independently care for V.B. Father also completed few of the services offered him.

Nothing in the record suggests it is in V.B.'s best interest for him to languish in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood, 10 Va. App. at 540, 394 S.E.2d at 495.

Nothing in the record suggests additional time will make either parent able to properly care for V.B. In the twenty-three months that V.B. has been in foster care, neither parent has completed the services offered to remedy the problems that brought V.B. into foster care. The evidence proves that father's mental deficiency is of such "severity that there is no reasonable expectation that [he] will be able to undertake responsibility for the care [of V.B.] . . . ."

- 7 -

Father also contends the efforts of PDSS were neither reasonable nor appropriate given his cognitive deficiencies.

Whether or not PDSS pursued "reasonable efforts" to assist father is a factual determination to be made by the fact finder. Ferguson, 14 Va. App. at 338, 417 S.E.2d at 9-10. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case." Id. at 338, 417 S.E.2d at 9. "Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338, 417 S.E.2d at 10.

PDSS was clearly aware of father's emotional and cognitive handicaps, including his inability to read and write. The evidence reveals that PDSS accommodated father's low mental functioning. On a number of occasions, with mother present, PDSS orally advised father of his obligations. Father was given a phone number for his transportation needs. Mother lived with father during the entire period of V.B.'s foster care placement, providing him with an avenue of assistance in his understanding of PDSS's requirements.

It is important to note that when father was questioned at the termination hearing concerning his failure to complete the required services, he responded that he was not the parent using drugs. Father never claimed that PDSS failed to assist him, and at no time did he indicate he did not understand the requirements placed upon him. Despite his impairment, father understood counsel's questions and his answers were responsive.

The record supports the trial court's finding that PDSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(B) and establishing that

termination of mother's and father's residual parental rights was in V.B.'s best interests.

Accordingly, we affirm the judgment of the trial court.[3]

Affirmed.

---

[3] Since we affirm termination under Code § 16.1-283(B), we need not address the sufficiency of the evidence under Code § 16.1-283(C). See Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (finding that when termination of parental rights under one subsection of Code § 16.1-283 is upheld, the Court need not consider termination under alternative subsections).