COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Humphreys and Senior Judge Fitzpatrick


SALLY FINCHAM BUTLER

OPINION BY
v.        Record No. 3176-05-4        JUDGE ROBERT J. HUMPHREYS
AUGUST 15, 2006

CULPEPER COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
John R. Cullen, Judge

(Christian A. Brashear, on briefs, for appellant).  Appellant
submitting on briefs.

(Robert F. Beard, on brief, for appellee).  Appellee submitting on
brief.

(J. Michael Sharman; Commonwealth Law Offices, on brief),
Guardian *ad litem* for the minor children.  Guardian *ad litem*
submitting on brief.


Sally Fincham Butler ("Butler") appeals the termination of her parental rights to A.L. and

V.L., pursuant to Code § 16.1-283(B).[1]  Butler contends that the trial court erred in denying her

motion for a continuance, improperly relying on entrustment agreements, and finding that there

was clear and convincing evidence to support the termination of her parental rights.  For the

following reasons, we affirm the trial court.

BACKGROUND

On June 10, 2003, Butler gave birth to a baby boy, A.L.  A subsequent test of his

meconium was "positive for cocaine metabolites."  On September 5, 2003, the Culpeper County

---

[1] The Guardian *ad litem* contends that the appeal as to V.L. should be dismissed, as there
is no notice of appeal in the record.  To the contrary, there is a notice of appeal for each
termination order, and, thus, the appeals for both children are properly before us.

Juvenile and Domestic Relations District Court granted temporary legal custody to the Culpeper County Department of Social Services ("Department").[2] On October 29, 2003, the Department filed an initial foster care plan, and, on November 20, 2003, the Culpeper County Juvenile and Domestic Relations District Court found that A.L. was abused and neglected. Thus, the court transferred custody to the Department.

On April 23, 2004, the Department transferred custody back to Butler, ordering that both she and A.L.'s father "complete current substance abuse treatment and counseling, complete current psychological counseling and treatment, comply with all terms of existing probation, [and] apply for Family Support management and assistance." On May 27, 2004, Butler tested positive for cocaine.[3] That same day, Culpeper Family Guidance notified Butler's probation officer that she failed to make several appointments.

Because Butler continued to miss her appointments, the probation officer visited Butler's home. Butler's father notified the officer that Butler was in Maryland with A.L. On June 17, 2004, Butler contacted the Department to place A.L. back in foster care.[4] However, because she was wanted for violating the terms of her probation, she had a friend take A.L. to the Department.

---

[2] At this time, A.L. was placed in foster care with the Martinez family.

[3] Butler also tested positive for cocaine on a prior occasion, February 26, 2004.

[4] At this time, the Department notified Butler that she needed to sign an entrustment agreement for the Department to maintain custody of A.L. If not, the Department would have to file a petition for emergency removal. Butler did not sign an entrustment agreement at this time. On June 21, 2004, the court entered an emergency placement order, placing A.L. back in the custody of the Department.

On January 26, 2005, the Department received a phone call stating that Butler was in George Washington Hospital in Washington, D.C.,[5] after delivering a baby girl, V.L.[6] The Department contacted Butler at the hospital to offer her the option of signing an entrustment agreement for A.L., as the Department would be seeking involuntary termination on February 10, 2005. Butler agreed to sign the entrustment agreement, so long as she could place her newborn child, V.L., with the same foster and adoptive family that had been caring for A.L. Thus, on January 26, 2005, Butler executed an entrustment agreement for each child,[7] thereby voluntarily transferring permanent custody of A.L. and V.L. to the Department.[8]

The Department filed petitions with the Culpeper County Juvenile and Domestic Relations District Court to terminate Butler's parental rights to A.L. and V.L. The juvenile and domestic relations district court ultimately terminated Butler's rights, and Butler appealed to the Culpeper County Circuit Court. On November 30, 2005, the Culpeper County Circuit Court

---

[5] Prior to her admission, Butler had been receiving court-ordered substance abuse treatment at Bethany Hall. However, prior to Thanksgiving 2004, Butler left Bethany Hall, and her whereabouts were unknown.

[6] At the time of V.L.'s birth, Butler tested positive for cocaine. A test of V.L.'s meconium was pending at the time of Butler's test. She also admitted to using cocaine, amphetamines, marijuana, and alcohol while pregnant with V.L.

[7] Each agreement states that Butler, after having been provided the opportunity for counseling, and after "due consideration of alternative plans" for the child, "surrender[ed] all legal custody of and to the aforesaid child to [the Culpeper Department of Social Services]." Each agreement further states that Butler acknowledged, by signing the agreement, that the Agreement "constitute[d] [her] permanent separation from and termination of all of [her] rights and obligations to said child from the effective date of such Agreement."

[8] In her brief, Butler alleges that she was not aware of the permanent nature of the agreements at the time she signed them. In fact, she alleges that the Department "misrepresented" the nature of the agreement. However, the trial judge "found no evidence that Ms. Butler did not know exactly what she was signing with the entrustment agreement." Accordingly, there was an explicit finding that there was no evidence of fraud, duress, or misrepresentation.

entered a final order terminating Butler's residual parental rights to A.L., pursuant to Code §§ 16.1-277.01, 16.1-283(B), 16.1-283(C)(1), and 16.1-283(C)(2). On the same day, the trial court also entered a final order terminating Butler's residual parental rights to V.L., pursuant to Code §§ 16.1-277.01 and 16.1-283(B). Butler now appeals.

## ANALYSIS

On appeal, Butler contends the trial court erred in three respects. First, Butler contends that the trial court abused its discretion in denying her motion for a continuance. Second, Butler contends that the trial court erred in relying on entrustment agreements entered into between Butler and the Department. And third, Butler argues that even if the entrustment agreements were properly before the trial court, the court erred in determining that clear and convincing evidence supported its decision to terminate Butler's parental rights to her two children. For the following reasons, we hold that the trial court did not abuse its discretion in denying Butler's request for a continuance, that the trial court properly relied upon valid entrustment agreements for purposes of terminating Butler's parental rights to each child, and that there was clear and convincing evidence to support the trial court's decision to terminate Butler's parental rights.

### A. The Trial Court Did Not Err In Denying Butler's Motion For A Continuance

Butler argues that the trial court erred in denying her motion for a continuance. We disagree.

"The decision whether to grant a continuance is a matter within the sound discretion of the trial court." Venable v. Venable, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986). This decision will not be reversed on appeal unless the trial court abused its discretion and the moving party was prejudiced by the court's decision. Id.; see also Butler v. Commonwealth, 264 Va. 614, 621, 570 S.E.2d 813, 817 (2002); Silcox v. Commonwealth, 32 Va. App. 509, 513, 528 S.E.2d 744, 746 (2000).

Here, Butler contends that, because she "was not in a position to go forward with the hearing at that time," the trial court abused its discretion in denying her request for a continuance. However, even assuming this denial to be error, Butler failed to provide any evidence to the trial court, or this Court, that she was prejudiced by the court's decision. In fact, the only statement in the proffered Statement of the Case[9] regarding the denial of the motion is as follows: "Ms. Butler's counsel moved for a continuance, which was denied." Therefore, "absent a showing of prejudice to [Butler] by the denial of a continuance," we cannot find that the trial court abused its discretion. See Cardwell v. Commonwealth, 248 Va. 501, 509, 450 S.E.2d 146, 151 (1994).

### B. The Trial Court Did Not Err In Terminating Butler's Parental Rights

Butler also argues that the trial court improperly relied upon the entrustment agreements to terminate her residual parental rights. Butler further contends that, even if this Court finds that "the entrustment agreement[s] w[ere] properly used," the trial court erred in finding that there was clear and convincing evidence to support the termination, as required by Code § 16.1-283(B). We disagree.

### 1. Reliance Upon the Entrustment Agreements

According to Code § 16.1-283(B), a court may terminate the residual parental rights of a parent or parents whose child has been placed in foster care as a result of an entrustment agreement.[10] The court may do so if it finds

---

[9] In lieu of a transcript, a Statement of the Case was filed with the court.

[10] According to Code § 63.2-1221,

> The entrustment agreement shall divest the birth parent(s) of all legal rights and obligations with respect to the child, and the child shall be free from all legal obligations of obedience and maintenance with respect to them, provided that such rights and

by clear and convincing evidence, that it is in the best interest of
the child and that:

1. The neglect or abuse suffered by such child presented a serious
and substantial threat to his life, health or development; and

2. It is not reasonably likely that the conditions which resulted in
such neglect or abuse can be substantially corrected or eliminated
so as to allow the child's safe return to his parent or parents within
a reasonable period of time. In making this determination, the
court shall take into consideration the efforts made to rehabilitate
the parent or parents by any public or private social, medical,
mental health or other rehabilitative agencies prior to the child's
initial placement in foster care.

Code § 16.1-283(B).

Butler contends that, according to Code § 63.2-1223, an entrustment agreement is
revocable until the child is placed with adoptive parents. Specifically, Butler contends that
terminating her parental rights "prior to adoption renders the 'revocation prior to adoption'"
language of Code § 63.2-1223 and the entrustment agreements "utterly meaningless."[11] Thus,

---

obligations may be restored to the birth parent(s) and the child by
circuit court order prior to the entry of a final order of adoption
upon proof of fraud or duress. An entrustment agreement for the
termination of all parental rights and responsibilities shall be
executed in writing and notarized.

[11] Code § 63.2-1223 reads, in its entirety, as follows:

A valid entrustment agreement terminating all parental
rights and responsibilities to the child shall be revocable by either
of the birth parents until (i) the child has reached the age of
twenty-five days and (ii) fifteen days have elapsed from the date of
execution of the agreement. In addition, a valid entrustment
agreement shall be revocable by either of the birth parents if the
child has not been placed in the home of adoptive parents at the
time of such revocation. Revocation of an entrustment agreement
shall be in writing and signed by the revoking party. The written
revocation shall be delivered to the child-placing agency or local
board to which the child was originally entrusted. Delivery of the
written revocation shall be made during the business day of the
child-placing agency or local board to which the child was

- 6 -

Butler argues that because the children had not yet been placed with adoptive parents[12] and she still retained the right to revoke the entrustment agreements, the trial court could not rely upon the entrustment agreements to terminate her parental rights.

However, we need not construe the statutory language cited by Butler as the basis for the trial court's alleged error because Butler failed to comply with a crucial statutory requirement. Specifically, Code § 63.2-1223 requires delivery of a "written revocation" to the "child-placing agency . . . in accordance with the applicable time period" set out in Code § 63.2-1223. Because Butler did not provide the Department with a written revocation of the entrustment agreements, the agreements were properly before the trial court. Thus, we hold that the trial court properly relied upon the entrustment agreements to terminate Butler's residual parental rights to both A.L. and V.L.

2. <u>Whether Clear and Convincing Evidence Supported the Termination of Parental Rights</u>

Although the entrustment agreements were properly before the trial court, we must also determine whether the trial court erred in finding, by clear and convincing evidence, that Butler's parental rights should be terminated. We hold that the record supports that decision.

On appeal, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best

---

originally entrusted, in accordance with the applicable time period set out in this section. If the revocation period expires on a Saturday, Sunday, legal holiday or any day on which the agency or local board is officially closed, the revocation period shall be extended to the next day that is not a Saturday, Sunday, legal holiday or other day on which the agency or local board is officially closed. Upon revocation of the entrustment agreement, the child shall be returned to the parent revoking the agreement.

[12] According to the record, A.L. continued to be cared for by the Martinez family. And, although no formal proceedings had begun, the Martinez family had expressed interest in adoption.

interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests," id., and, thus, "[t]he trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it,'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

In order to terminate residual parental rights under Code § 16.1-283(B), the court must make "three statutorily required findings" based upon "clear and convincing evidence." Kaywood v. Halifax County Dep't of Social Services, 10 Va. App. 535, 538, 394 S.E.2d 492, 494 (1990); Code § 16.1-283(B). First, the termination of the parents' residual rights must be in the "best interests of the child." Kaywood, 10 Va. App. at 538, 394 S.E.2d at 494 (citing Code § 16.1-283(B)). "Second, the neglect or abuse suffered by the child must present a 'serious and substantial threat to his life, health or development.'" Id. (quoting Code § 16.1-283(B)(1)). And "[t]hird, the court must find that 'it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.'" Id. (citing Code § 16.1-283(B)(2)). Thus, "Code § 16.1-283(B) speaks prospectively, as to the ability of the parent or parents to 'substantially' remedy, 'within a reasonable period of time,' the conditions which led to the foster care placement." City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003).

In this case, Butler contends the trial court erred in terminating her parental rights to both A.L. and V.L., pursuant to Code § 16.1-283(B). We disagree.

## a. Termination of Parental Rights to A.L.

The trial court terminated Butler's rights to A.L., pursuant to Code §§ 16.1-277.01, 16.1-283(B), 16.1-283(C)(1), and 16.1-283(C)(2).[13]  However, on appeal, Butler only challenges the trial court's determination under Code § 16.1-283(B).  Because the trial court also terminated

---

[13] Code § 16.1-283(C) reads, in its entirety, as follows:

> C. The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1. The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.  Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition; or
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.  Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.  The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Butler's rights pursuant to Code § 16.1-283(C)(1) and 16.1-283(C)(2),[14] we need not address the sufficiency of the evidence pursuant to Code § 16.1-283(B).  See Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005).  In other words, because the evidence is sufficient to support termination pursuant to Code § 16.1-283(C)(1) and 16.1-283(C)(2), Butler's appeal as to Code § 16.1-283(B) is moot.

b.  Termination of Parental Rights to V.L.

The trial court also entered a final order terminating Butler's residual parental rights to V.L., pursuant to Code §§ 16.1-277.01 and 16.1-283(B).  The trial court found that Butler (1) "admitted to continued drug use, including the use of drugs and alcohol shortly before the

---

[14] Although "[b]oth subsection (B) and subsection (C)[] of Code § 16.1-283 address substantially similar grounds for the termination of parental rights," this Court has "previously upheld terminations under both subsections of Code § 16.1-283, as well as under one or either of the individual subsections."  Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466 (citing Ferguson v. Stafford County Dep't of Soc. Serv., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992) (upholding the trial court's decision to terminate residual parental rights pursuant to Code § 16.1-283(B) and (C)(1)); Lowe v. Dept. of Public Welfare, 231 Va. 277, 281-82, 343 S.E.2d 70, 73 (1986) (upholding termination of residual parental rights pursuant to Code § 16.1-283(B)(2)); and Lecky v. Reed, 20 Va. App. 306, 313-14, 456 S.E.2d 538, 541 (1995) (ordering termination of residual parental rights pursuant to Code § 16.1-283(C))).  Specifically, Code § 16.1-283(C) focuses on whether the parent or parents "have been []willing or []able within a reasonable period of time not to exceed twelve months," to "remedy substantially" the conditions which led to the foster care placement.  Id.; see also Ward v. Commonwealth Dep't of Soc. Servs., 13 Va. App. 144, 150, 408 S.E.2d 921, 924 (1991).
In this case, the trial court found that (1) Butler "has habitually abused or is addicted to intoxicating liquors, narcotics, or other dangerous drugs," (2) Butler "has not responded to or followed through with recommended and available treatment," (3) Butler "has failed to maintain contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies," (4) Butler "without good cause, has been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement," (5) and that it is in the best interest of the child to terminate Butler's residual parental rights.  Given that Butler admitted to continual drug use while pregnant with V.L., to leaving Bethany Hall before finishing treatment, and to remaining in Maryland to avoid prosecution for a probation violation, we cannot say that the trial court erred in finding that there was clear and convincing evidence to support terminating Butler's parental rights pursuant to Code § 16.1-283(C).

child's birth," (2) "chose to leave the hospital after the birth of the child without taking the child with her and without providing care and comfort for the child," (3) "suffers from drug addiction, and has failed to follow through on repeated attempts at treatment," (4) "has been incarcerated due to her own conduct," and (5) is not reasonably likely to "substantially correct" or "eliminate" the conditions which led to her child's placement in foster care.

Although Butler argues that "the only condition that presented a harm to the children was [her] drug use" and that "[s]he is a good mother, who is being prevented from raising her children successfully only by virtue of her present incarceration," we disagree. The record indicates that Butler's drug use is pervasive. Butler's first child, A.L., was born with cocaine in his system, and, even after the Department removed him from her care, Butler continued to use illegal narcotics. In fact, after a dirty urine screen in mid-2004, Butler was incarcerated for violating her probation. Indeed, although the Department made reasonable efforts to provide Butler with resources to help with her addiction, Butler failed to take advantage of the services. Specifically, Butler was admitted to Bethany Hall in October 2004, but left the program prior to completion.

Moreover, Butler continued to use drugs knowing that she was pregnant, and she intentionally remained in Maryland to avoid prosecution for violating her probation. Neither pregnancy nor incarceration deterred Butler from continuing to abuse drugs. Thus, we cannot say that the trial court erred in finding that it was not reasonably likely that Butler would correct the conditions leading to V.L.'s placement with the Department. Accordingly, based on this record, the trial court's decision to terminate Butler's parental right to V.L., pursuant to Code § 16.1-283(B), is not plainly wrong or without evidence to support it.

- 11 -

## CONCLUSION

Because Butler did not allege prejudice, we hold that the trial court did not err in denying her motion for a continuance. We also hold that, because Butler failed to comply with a statutory requirement of Code § 63.2-1223, the entrustment agreements were properly before the trial court. Moreover, we hold that Butler's appeal regarding A.L. is moot. Specifically, although Butler challenges the termination under Code § 16.1-283(B), she failed to challenge the termination under Code § 16.1-283(C). Lastly, we hold that the trial court did not err in finding that there was clear and convincing evidence to support the termination of Butler's parental rights to V.L. Accordingly, we affirm the judgment below.

Affirmed.