COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


JOHN HART

                                                          MEMORANDUM OPINION[*]
v.        Record No. 1653-06-4                                PER CURIAM
                                                              MAY 15, 2007
ARLINGTON COUNTY DEPARTMENT
  OF HUMAN SERVICES


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                              James F. Almand, Judge

              (Matthew P. Bangs, on brief), for appellant.  Appellant submitting
              on brief.

              (Mary E. Craig, Assistant County Attorney; Thomas L. O'Neill,
              Guardian *ad litem* for the minor child, on brief), for appellee.
              Appellee and Guardian *ad litem* submitting on brief.


        John Hart, father, appeals the trial court's decision, dated June 1, 2006, terminating his

parental rights to his son.  He contends the trial court erred by (I) denying his motion for a

continuance and (II through V) terminating his parental rights under Code § 16.1-283(B) and (C)

and finding that terminating his parental rights was in his child's best interests.  We affirm the

decision of the trial court.

                                          Background

        We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

established that Hart's son, born July 29, 2003, was taken to the Arlington County Department of

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Services (DHS) on December 28, 2004 by the child's mother. At that time, Hart's whereabouts were unknown. The child's mother told social worker Kimberly Coles that she had been using crack cocaine and had nowhere to house the child, that there were no relatives available to care for the child, and that Hart was a substance abuser and had been released from jail recently. On January 27, 2005, Hart came to DHS and requested custody of the child. Hart's criminal history included numerous drug distribution charges, grand larceny, aggravated assault, and other felonies, and a misdemeanor conviction for assault of a family member. Some of these crimes are "barrier crimes" preventing DHS from placing the child in Hart's care, but Coles informed Hart that he could petition the court for custody and encouraged him to participate in the court hearings. Coles also arranged for Hart to visit his child on January 31, 2005.

On February 10, 2005, the child went to live with his mother at Demeter House, where she was participating in a residential drug treatment program that offered substance abuse counseling and child care. Hart visited weekly until April 2, 2005. When Hart came to visit that day, he was under the influence of drugs and offered drugs to the child's mother. After that incident, Hart had no further contact with his child.

On May 18, 2005, the child's mother said she could no longer care for her child and asked that the child be returned to foster care. On July 15, 2005, the child's mother left treatment and said she wanted to relinquish her parental rights. Thereafter, Coles sent certified letters to Hart and Hart's mother asking them to contact DHS. Although they received and signed for the letters, neither of them ever contacted DHS. Hart called Coles in October of 2005, the first contact he had with Coles since January 31, 2005, and said he had received the foster care plan and stated that he agreed with the goal of adoption. Hart told Coles he had come to the September hearing on the foster care plan that changed the goal to adoption, but left before the case was called. Hart did not

tell Coles where he was living, did not tell her of any relatives who could care for the child, and did not inform his relatives of his child's placement.

Hart told his sister-in-law he did not know where his child was. Thereafter, Hart's sister-in-law learned that the child was in foster care but did not petition for custody of the child. Hart's sister knew the child was in foster care but she never inquired about the child's welfare and did not petition for custody. Hart's mother never contacted DHS during the pendency of the case to inquire about the child's welfare or to provide names of relatives who could care for the child.

At the termination hearing, Hart acknowledged receiving Coles's letter in July 2005 and claimed he called her answering machine but did not leave a message. Hart denied ever taking drugs to the child's mother at Demeter House. Hart explained that he received a copy of the foster care plan in the mail, but did not read it until he went to the September 2005 hearing. Hart left before the case was called. Hart admitted that he called Coles in October 2005 and told her he approved the goal of adoption. Hart said he missed the December 2005 hearing because he was incarcerated, but attended the March 2006 hearing although still incarcerated. Hart admitted that he never told his family about his child going into foster care and never gave the names of his family members to Coles. Hart testified that if the court would grant him more time, his plan was to further his recovery while, "hopefully" one of his sisters-in-law would take custody of the child while he "worked" his way back into the child's life. Hart admitted that he was currently in jail because he violated probation by using drugs. Hart acknowledged that he has received drug treatment periodically since 1989, including two extensive stays at "Second Genesis" and treatment in the "ACT Unit." Hart admitted that he did not pay child support. When Hart is not in jail, he lives with his mother and does not pay rent but would pay rent "if she asked [him] to."

Meanwhile, the child has been in the same foster home since May 2005 and is thriving. The child has bonded to his foster mother, who is willing to adopt him.

<u>Analysis</u>

I.

Hart contends the trial court erred by denying his motion for a continuance so that he could have additional time to assist counsel and for family members to file for custody before his parental rights were involuntarily terminated. "'The decision whether to grant a continuance is a matter within the sound discretion of the trial court.'" <u>Butler v. Culpeper County Dep't of Soc. Servs.</u>, 48 Va. App. 537, 543, 633 S.E.2d 196, 199 (2006) (quoting <u>Venable v. Venable</u>, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986)). This decision will not be reversed on appeal unless the trial court abused its discretion and the moving party was prejudiced by the court's decision. <u>Id.</u>

Hart's child was born on July 29, 2003 and was placed in foster care on December 28, 2004. On May 10, 2006, the day the termination hearing was scheduled to be heard, Hart released his attorney and requested a continuance. The attorney for DHS opposed this continuance request. The court granted Hart a continuance until May 31, 2006 and told him the case would be tried on that day. On May 31, 2006, Hart requested a continuance until September or October, 2006 "based on his desire to straighten out his legal difficulties, prior to a hearing, which would enable him then to represent himself and participate in a much more appropriate manner."

Hart failed to provide any evidence to the trial court or to this Court that he was prejudiced by the trial court's denial of his second motion for a continuance. Hart fired his attorney and was granted a 21-day continuance for his newly appointed attorney to prepare for the termination hearing rescheduled for May 31, 2006. Hart contends some of his relatives "may have filed petitions for custody" of the child. The evidence showed that Hart never gave the names of his relatives to the DHS and that even when his relatives heard that the child was in foster care, they did not inquire about the child or file a petition for custody. With no showing of prejudice to Hart by

the denial of the continuance, we cannot find that the trial court abused its discretion.  See Butler, 48 Va. App. at 544, 633 S.E.2d at 199.

## II. through V.

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests."  Logan, 13 Va. App. at 128, 409 S.E.2d at 463.  On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."  Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990).  "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(B) provides that a parent's rights to neglected or abused children may be terminated if the court finds by clear and convincing evidence that it is in the children's best interests and that (1) the neglect or abuse presented a substantial threat to the children's life, health, and development, and (2) it is unlikely that the conditions that resulted in the neglect or abuse can be substantially corrected or eliminated such that the children can return to their parent's care within a reasonable period of time.  Proof that the parent, without good cause, has not responded or followed through with appropriate efforts by the various agencies designed to reduce, eliminate or prevent the neglect or abuse is prima facie evidence of these conditions.  Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, (1) that the termination is in the best interests of the child, (2) that "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) that, despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care."  "[T]ermination of residual parental rights is a grave,

drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

DHS proved by clear and convincing evidence that termination of Hart's parental rights was in his child's best interests. The evidence proved that the child had lived with his mother until the mother was no longer able to care for him. During this time, Hart's whereabouts were unknown. About a month after the child went into foster care, Hart requested custody of the child. Hart's criminal history included numerous drug distribution charges, grand larceny, aggravated assault, and other felonies, and a misdemeanor conviction for assault of a family member. Hart's criminal history included "barrier crimes" that prevented DHS from placing the child in Hart's care. DHS encouraged Hart to participate in the hearings and to petition for custody. Hart visited the child after the child went to live with his mother at Demeter House, until the April 2005 visit when Hart arrived for the visit under the influence of drugs and offered drugs to the child's mother. Thereafter, Hart had no contact with his child. In addition, Hart had no contact with DHS until October 2005, despite DHS sending him a certified letter in July 2005 asking him to contact them. In October 2005, Hart contacted Coles and said he agreed with the goal of adoption. Hart failed to attend the next few hearings for various reasons, including incarceration. Hart was offered drug treatment while he was jailed. In fact, Hart has received treatment periodically since 1989, including two extensive stays at "Second Genesis" and treatment in the "ACT Unit." Because Hart's whereabouts were unknown and he did not contact Coles as requested, Coles was unable to provide additional services to Hart. Hart testified that his "plan" for his child was that "hopefully" one of his sisters-in-law would care for his child while he furthered his recovery. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a

parent will be capable of resuming his responsibilities." <u>Kaywood v. Halifax County Dep't of Soc.</u>

<u>Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that the Department proved by clear and convincing evidence that Hart's parental rights should be terminated pursuant to Code § 16.1-283(B) and (C) and that the termination of Hart's parental rights was in his child's best interest. Accordingly, we affirm the judgment.

<u>Affirmed.</u>