COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Petty and Senior Judge Bumgardner

HELEN BRAZELL

                                                        MEMORANDUM* OPINION
v.      Record No. 1347-06-4                             PER CURIAM
                                                        AUGUST 12, 2008
FAIRFAX COUNTY DEPARTMENT OF FAMILY SERVICES


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            R. Terrence Ney, Judge

        (Daniel L. Gray; Cooper Ginsberg Gray, PLLC, on briefs), for appellant.

        (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
        County Attorney; Dennis R. Bates, Senior Assistant County Attorney;
        Sarah W. Townes, Assistant County Attorney, on brief), for appellee.

        (Melissa L. Barnes; Martin, Arif & Greene, on brief), Guardian *ad litem*
        for the infant children.

        The circuit court terminated Helen Brazell's residual parental rights to three of her

children.  On appeal, Brazell claims the circuit court abused its discretion by denying her motion

for a continuance, erroneously failed to retain court-appointed counsel on her behalf, and based

its termination decisions on insufficient evidence.  We disagree with Brazell and summarily

affirm pursuant to Rule 5A:27.

                                            I.

        In an appeal of a termination proceeding, we review the evidence "in the 'light most

favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all

reasonable inferences fairly deducible therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46

Va. App. 257, 262, 616 S.E.2d 765, 767 (2005).  We also limit our factual review to that portion

of the evidentiary record "relevant to the issues presented in this appeal."  Raytheon Technical

Servs. Co. v. Hyland, 273 Va. 292, 296, 641 S.E.2d 84, 86 (2007).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence at trial demonstrated that Brazell's seven-year-old daughter ("JM") was placed in emergency foster care on November 1, 2004, after she had been left unsupervised for nearly three days. JM and her home were in deplorable condition. A police officer conducting a welfare check found a smashed coffee table, piles of dirty clothes, and decomposing food in the apartment. The Fairfax County Department of Family Services (DFS) repeatedly attempted to contact Brazell by leaving notes and messages. When Brazell finally contacted DFS, she told the social worker that JM should remain in foster care as it would "teach [JM] a lesson."

JM's brothers, JD and JR, were later removed on January 24, 2005, when Brazell impeded DFS efforts to provide the boys in-home services by refusing to provide DFS with her current address.[1] Brazell's live-in boyfriend, Henry Romero, was physically abusive. Police responded to several complaints. On one occasion Brazell was treated at the hospital after Romero struck her in the back of her head with a baseball bat. Several incidents of domestic abuse occurred in front of the children.

While the children were in foster care, DFS offered services to Brazell, including a psychological evaluation, a psychiatric evaluation, a parent-child assessment, parenting classes, home-based services, employment services, temporary aid for needy families, food stamps, free daycare, payment for car repairs, and rental assistance. Brazell did not take advantage of the services offered. She frequently moved and did not always inform DFS of her new address. In January 2005, the Fairfax County Juvenile and Domestic Relations District Court issued a protective order: "Henry Romero shall have no contact with the child or mother and shall not come within 500 feet of the family residence."

---

[1] After the removal of her three children, Brazell gave birth to a fourth child.

One year later, when the pattern of relocating and evasiveness continued, DFS changed the goal of the foster care plan to adoption. On February 9, 2006, the JDR district court entered entrustment orders for the children and orders terminating Brazell's parental rights. Brazell appealed these orders to the circuit court. On March 16, 2006, the circuit court conducted a scheduling conference and entered an order setting the *de novo* trial for May 2, 2006.

On April 7, court-appointed counsel moved to withdraw because Brazell had independently filed the appeal and because she, having obtained employment, was no longer indigent. Although properly noticed for the hearing, Brazell did not appear. The circuit court granted the motion to withdraw but clarified in its order that the trial would not be continued to give Brazell more time to find another lawyer.

A few days before trial, Brazell filed a *pro se* motion stating that, on the morning of trial, she would seek a continuance and request the court "to appoint her counsel" because "[s]he is indigent and is without funds to hire an attorney." As promised, at the start of trial on May 2, Brazell requested a continuance and a court-appointed attorney. "Why couldn't you afford a lawyer?" the court asked. Brazell responded by claiming she did not "make a lot of money" but conceded that she was working. She proffered that she met once, on April 25, with legal aid attorneys. They refused to take the case because she gave them too little time to prepare for trial. Brazell made no other proffer showing any due diligence in seeking to retain counsel.

DFS's counsel argued that Brazell had previously represented at the earlier scheduling hearing on March 16 that she was "going to hire counsel" and "she did not wish to be represented" by her existing court-appointed counsel. DFS's counsel also pointed out the numerous witnesses, eighteen in all, present and ready to testify. The statutory deadline for termination appeals, counsel added, was fast approaching. See Code § 16.1-296(D). The circuit court denied the motion for court-appointed counsel because, despite her bare allegation of

- 3 -

indigency, Brazell presented no supporting evidence and conceded that she was gainfully employed at the time of trial. The court denied the "eleventh-hour" continuance request because of the time constraints of Code § 16.1-296(D), the multitude of witnesses subpoenaed for trial that day, and the fact that Brazell had been given "ample time" to obtain counsel. "[Y]our failure to do so rests upon you," the court explained to Brazell. "It seems to me," the court ruled, that there would be "significant prejudice because of all of those factors — not to mention the children who are involved in this — to not have this matter go forward today."

Brazell made an opening statement, cross-examined DFS's witnesses, examined her own witness, admitted documentary evidence, noted objections, and made a closing argument. The court gave Brazell wide latitude to challenge DFS's case and to present her defense.

Dr. William Ling, an expert in psychology and assessment of parenting capacity, testified that Brazell had a history of poor impulse control, cognitive disorganization, and narcissistic tendencies, all of which affect her ability to parent the children. Her history suggested that these psychological traits had "been enduring for a long period of time." His written report dated December 17, 2004, noted, "despite the report of domestic violence between herself and her paramour," Brazell's responses recognize "absolutely no conflict within the family."

A November 2004 DFS Foster Care Service Plan recounted Brazell's daughter "seeing her mother and Henry Romero, the younger child's father, using cocaine and people walking around naked in their apartment." The report indicated, "Ms. Brazell reports a history of domestic violence" with Henry Romero. Brazell claims that she broke up with Romero in June 2004, but "friends and relatives deny the claim." They described Romero as a person with drug problems who once "hit Ms. Brazell on the head with a baseball bat." The relatives associated Brazell's stillborn baby girl in May 2004 with "another domestic violence incident." At the time of the report, Brazell had "an outstanding warrant for grand larceny in Norman, Oklahoma."

- 4 -

Foster care service plans for two of the children written in March 2005 again recounted that Brazell and Romero "admitted to a history of domestic violence" including the "incident where he hit Ms. Brazell on the head with a baseball bat." In his son's plan, Romero was described by a maternal relative as "a violent man" with a "family history of alcoholism." Both reports indicated Romero "admitted to alcohol and cocaine use in the past" and, likewise, Brazell once came to the DFS office for parental visitation with "dilated pupils" and was "unable to understand the Protective Supervision social worker." Treatment was recommended for both Brazell and Romero by Alcohol and Drug Services.

Orders from the JDR district court in March and April 2005, directed Romero to "complete a Department-approved anger management program" and follow any and all recommendations. In the April order, the court also directed Romero to "submit to an alcohol and drug services (ADS) assessment and follow any and all treatment recommendations . . . ."

In a June 2005 foster care service plan review, the social worker noted that "Mr. Henry Romero (client's significant other) was arrested on an alcohol related charge and he is currently detained" in Arlington, Virginia. The social worker described the daughter's "concerns about returning home if Mr. Romero (mom's significant other) is there. She is afraid that Mr. Romero will continue to physically abuse her mother."

The January 2006 service plans changed the goal to adoption. The plan for the youngest boy noted: "Neither of the biological parents have shown skills" necessary to keep the children safe. "Mr. Romero is currently in jail," and "Ms. Brazell lacks effective parenting skills . . . ." The report for one of the other children noted that the child had "expressed not wanting to go back to her home as she is afraid of her mother's significant other, Mr. Romero." The child "thinks that when Mr. Romero gets released from jail that her mother will take him back" and then it is questionable whether "anyone will be safe in the home."

In addition, the circuit court considered a letter written to the court prior to trial by Brazell's oldest son, who turned ten years old the week before trial. The boy wrote:

> Dear Judge,
>
> I would like to let you know that I want to be adopted. I did not like it with my mom. I was not doing good in school, I didn't get any opertunities to do things an it was an unhealthy way to live. We were living in hotels when we didn't have a house and had little food. All of our close were to small exsept two or three pairs.
>
> My mom would get into fights with my grandmom and get kicked out and I really don't know if my mom will keep living with my grandmom. I wonder if I will be safe if it comes down to that.
>
> I do not trust my mom because she keept on going back to Henry and when hes out of the picture she will get another crazy guy. I also don't trust her because she couldn't maintain a house. [sic throughout]

When Brazell took the stand to testify, she denied that either she or her children had ever been the victims of domestic violence. She denied that Jason Black was abusive. She denied that Romero was abusive. She denied ever being hit with a bat. She denied any connection between the birth of her stillborn child and domestic violence. She claimed that the table in the living room broke when she sat on it. She testified that she "would never bring that type of behavior around [her] children."

In rebuttal, DFS offered additional evidence of the domestic abuse by Brazell's boyfriends. Ms. Ramos-Ruiz testified that Jason Black, the father of Brazell's two oldest children, had admitted to domestic violence with Brazell. Brazell told Ramos-Ruiz that "she broke up her relationship with Mr. Black because he was abusive — verbally and physically abusive." Brazell also told Ramos-Ruiz that "Henry Romero hit her with a bat in her head" when "she was pregnant, and I remember her saying that she went to the hospital and got some stitches."

DFS then offered three Fairfax County Police Department Field Investigation Reports into evidence. The first report, from January 2003, stated:

> Ms. Brazell called from a friends house to advise that her boy friend Mr. Henry Romero (who lives with her and she is 15 weeks pregnant with his baby) assaulted her last night. Ms Brazell advised that Henry had been using cocaine and insisted on driving. Ms. Brazell would not allow him to do so. . . . This led to Henry kicking Ms. Brazell as well as punching her several times in the face, causing a black and blue right eye, a large scratch, and her face to swell. . . . She did not call last night because she was afraid that he would hurt her and her [son]. It should be known that [her son] was present when this took place.

The second report, from February 2003, stated:

> Ms. Brazell reports she is in the process of breaking up with her live in boyfriend Henry Romero due to his ongoing cocaine habit. On 2-10-03 at around 2215 hrs Mr. Romero was coming home to their apartment on Celtic Dr. Ms. Brazell did not want him to come inside the apartment so she locked the deadbolt lock. Mr. Romero got angered he was locked out so he went around to the sliding glass door and smashed out the glass door with a aluminum baseball bat. Mr. Romero entered the apartment and struck Ms. Brazell with the bat in her back and the back of her head before leaving out the broken door. Ms. Brazell grabbed her 6yr old and 5yr old kids who were in the apartment and drove to Fairfax Hospital to be treated. . . . Ms. Brazell suffered bruising on her back and a 2" laceration on the back of her head that required 11 stitches. The baby was not injured. . . . Mr. Romero could not be located. . . . I secured a malicious wounding warrant and a emergency protective order.

The third report, from June 2004, stated:

> I responded to the listed address for a domestic assault. Upon arrival I spoke with Ms. Brazell . . . who stated that her live-in boyfriend and father of her son, Mr. Romero . . . assaulted her. She stated that they got into an argument over him coming home drunk. During the argument he pushed her down causing her to slam her head on the wall causing a bump on the left side of her head. He continued on his rampage by overturning all the furniture in the house. Mr. Romero then punched Ms. Brazell in her mouth causing her lip to swell on the right side. Mr. Romero left prior to my arrival. . . . Rescue was declined by Ms. Brazell.

During her closing argument, the court asked Brazell, "Why haven't you been able to come to grips" with the "history of domestic abuse that you had with Mr. Romero?" She

responded: "Because I never really had domestic abuse with him." The court concluded: "You're unable to be honest with the Court, with your therapist and with yourself. It really goes to the heart of the matter in some respects."

The court then found clear and convincing evidence supported termination based in part upon "the history of violence, the history of transient living," and the uncertainty of Brazell's ability to "provide a stable location" even with the help of the children's grandmother.[2] The circuit court terminated Brazell's parental rights pursuant to Code § 16.1-283(C)(2). Brazell appealed.

During the preliminary stages of this appeal, we entered an interlocutory order remanding the case to the circuit court to state "(1) the reasons(s) for granting the motion to withdraw as counsel, and (2) the reasons(s) substitute counsel was not appointed to represent appellant." After receiving the circuit court's reply, we again remanded with specific instructions to "make a factual finding, pursuant to statutory guidelines, as to the eligibility of appellant for court-appointed counsel." Order, Record No. 1347-06-4 (May 18, 2007). At this remand hearing, the circuit court pointed out that

> Brazell stated under oath throughout the [termination] hearing that she was earning monies that would plainly show, had a calculation been done at that time, that she did not qualify for court-appointed counsel, and further, that when [her prior court-appointed counsel] withdrew as her counsel, she was put on notice that she needed to have counsel at the time of the trial, and the case would not be continued for her failure to do so.
>
> [I]t's plain that her responses to the interrogatories are consistent with her testimony given at trial that she was, in fact, employed and, in fact, earned monies that would disqualify her for the appointment of counsel.

---

[2] Brazell relocated repeatedly during the time her children were in foster care. At the time of trial, she was staying with her mother. This living arrangement had apparently changed again by the time of the remand hearing. See Hearing Tr. at 6 (Aug. 16, 2007).

- 8 -

At the remand hearing, Brazell's counsel conceded this point without qualification. Brazell's counsel likewise admitted that Brazell was earning "over the guideline" amount at the time of the remand hearing, rendering her ineligible for appointment of counsel for appeal. In an abundance of caution, however, the circuit court appointed counsel for Brazell for purposes of this appeal.

II.

On appeal, Brazell raises three questions presented. The first contends the circuit court abused its discretion in denying Brazell's request for a continuance of the trial date. The second claims the court erred by denying her motion for court-appointed counsel. The third challenges the sufficiency of the evidence supporting the court's termination orders.

A. BRAZELL'S MOTION FOR A CONTINUANCE TO RETAIN COUNSEL

*De novo* appeals of termination orders must be held within ninety days of the notice of appeal, Code § 16.1-296(D), based on the principle that "child-custody litigation must be concluded as rapidly as is consistent with fairness," Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 32 (1981). When the circuit court relieved Brazell's counsel, the court made clear in its order that "Brazell shall not be granted any continuances for purposes of hiring counsel." Brazell did not attend the hearing, despite having been given prior notice. She did learn of the court's actions, however, and she had known since the scheduling hearing on March 16 of her need to retain private counsel.

On the morning of trial, Brazell claimed she needed more time to retain counsel. Her proffer of due diligence was merely that she met once, on April 25, with legal aid attorneys who refused to take her case because she gave them too little time to prepare for trial. No proffer or evidence suggested she met with any other attorney or attempted to make any other financial arrangements in an effort to secure counsel.

A trial court's decision to grant or deny a continuance "is a matter within the sound discretion of the trial court." Butler v. Culpeper County Dep't of Soc. Servs., 48 Va. App. 537, 543, 633 S.E.2d 196, 199 (2006) (citation omitted). We will reverse a continuance decision only if the appellant demonstrates it to be "plainly erroneous" by showing an "abuse of discretion and resulting prejudice to the movant." Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 33, 645 S.E.2d 261, 264-65 (2007). We find that the circuit court did not abuse its discretion in concluding that Brazell had been given "ample time" to obtain counsel and that her "failure to do so rests upon" her. The court properly took into account the limitation period governing termination proceedings, the prior order advising that further continuances would not be granted,[3] Brazell's lack of due diligence in attempting to secure counsel, and the presence of eighteen witnesses that may or may not be available at some later date.

## B. BRAZELL'S REQUEST FOR COURT-APPOINTED COUNSEL

Brazell argues that the circuit court also erred in not appointing counsel for her on the morning of trial, even though that would have necessitated a continuance. In her written motion, Brazell claimed she had a right to court-appointed counsel due to indigency. She orally repeated this assertion, claiming (without elaboration) that she did not "make a lot of money" when the court asked, "Why couldn't you afford a lawyer?"

---

[3] We acknowledge Brazell's complaint that the trial court, in referring to its prior order, used the expression "law of the case." Brazell reads into this remark the trial court's view that it was powerless to grant the continuance or to reconsider its prior order — which, if so, would be a fundamental misunderstanding of the law-of-the-case doctrine, see Robbins v. Robbins, 48 Va. App. 466, 474, 32 S.E.2d 615, 619 (2006). We do not interpret the court's expression, however, to suggest it labored under such a conceptual error. To the contrary, the court's actions demonstrate that it gave conscientious consideration to Brazell's request, heard argument from all counsel concerning the request, and made specific findings in denying the request. "It seems to me that there would be significant prejudice because of all of those factors — not to mention the children who are involved in this — to not have this matter go forward today. For these reasons, the motion for a continuance is denied." Had the court been laboring under a true law-of-the-case misunderstanding (as Brazell claims), there would have been nothing for the court to consider and no decision for the court to make.

We previously remanded this case to the circuit court to make specific factual findings on the question whether Brazell, at the time of the trial, would have been entitled to court-appointed counsel due to indigency. At the remand hearing, the circuit court found that Brazell was not eligible for court-appointed counsel due to indigency status. Brazell's counsel conceded this point at the remand hearing and did not object to any of the court's findings.

For the first time, Brazell now claims that *even if* she did not qualify under the indigency criteria for court-appointed counsel at trial, the circuit court nonetheless retained the inherent discretion to appoint counsel for her. The failure of the court to exercise that discretion, Brazell argues, was reversible error. Brazell, however, never specifically made this argument at trial or at the remand hearing. The only question addressed at trial and on remand was whether Brazell qualified for court-appointed counsel based upon indigency.

We cannot address this issue for the first time on appeal. "As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742 (emphasis in original), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

Brazell argues that Rule 5A:18 should not apply because she was *pro se*. We disagree. Rule 5A:18 is a neutral principle of waiver that "applies equally to both *pro se* litigants and those who are represented by counsel." Newsome v. Newsome, 18 Va. App. 22, 24-25, 441 S.E.2d 346, 349 (1994). A litigant appearing *pro se* "is no less bound by the rules of procedure and substantive law than a defendant represented by counsel." Townes v. Commonwealth, 234 Va. 307, 319, 362 S.E.2d 650, 657 (1987); see also Francis v. Francis, 30 Va. App. 584, 591, 518 S.E.2d 842, 846 (1999) ("Even *pro se* litigants must comply with the rules of court."). Relaxing

the procedural rules for *pro se* litigants would have the anomalous effect of disfavoring litigants represented by counsel, an intolerable consequence for a judicial system devoted to neutrality to all and favoritism to none.

We also see no grounds for invoking the good cause or ends-of-justice exceptions to Rule 5A:18. Brazell's argument rests on a fatal conceptual flaw: Even if the circuit court had the power to appoint counsel for her *despite* her lack of indigency, that does not mean (nor could it) that she would have had a *legal right* to such an appointment. An enforceable right to counsel in termination cases exists only where the Constitution or the statutes recognize it — and both require some threshold showing of indigency. See Lassiter, 452 U.S. at 32; Code § 16.1-266(D) (incorporating Code § 19.2-159's indigency criteria). No presumption of a "right to appointed counsel" exists in termination proceedings, even though they undoubtedly involve a substantial legal interest. See Lassiter, 452 U.S. at 31; Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 21.2, at 586 (2d ed. 1987) (recognizing that any "right under the Due Process Clause of the Fourteenth Amendment to have counsel provided for him by the state" is rendered moot in states where "the statute on termination provides for the assistance of counsel to indigent defendants").

### C. SUFFICIENCY OF THE EVIDENCE — TERMINATION DECISION

At no point in the circuit court did Brazell challenge the sufficiency of the evidence supporting the court's termination decision. She made no motions to strike, no motion to set aside, and no motions to reconsider based upon grounds of sufficiency. Rule 5A:18 precludes appellate review of her argument that the circuit court, as a matter of law, should have dismissed the DFS termination petitions on grounds of insufficient evidence.

Here, too, we see no principled basis for suspending Rule 5A:18 under the good cause or ends-of-justice exceptions. "In order to avail oneself of the exception, a defendant *must*

*affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (emphasis added). "Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike" the evidence as insufficient. Id. "Such a rule would obviate the requirement for making an adequate motion to strike or a contemporaneous objection that the evidence was insufficient" and encourage "trial counsel to stand mute . . . knowingly inviting the trial judge to commit error . . . ." Id. Were we to adopt this "type of broad application of the ends of justice exception," we would "undermine the trial court's ability to correct errors in the trial court and thereby frustrate the ends of justice, not prevent a miscarriage of justice." Id.

Here, the record falls far short of affirmatively demonstrating a miscarriage of justice. Code § 16.1-283 provides for the termination of parental rights when parents are "unwilling or unable within a reasonable period of time *not to exceed twelve months* from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement . . . ." Code § 16.1-283(C)(2) (emphasis added).

Brazell refused to acknowledge, let alone remedy, the primary conditions prompting the removal of the children. The circuit court expressly found her testimony incredible, that she had lived for years in a pattern of abusive relationships, that she exhibited a pattern of transient living, and that there was little indication she was able to provide the safe, stable environment her children needed. The record supports the circuit court's findings that DFS had offered reasonable services, that Brazell had failed to remedy the conditions that led to the removal of the children, that clear and convincing evidence proved that Brazell's parental rights should be terminated pursuant to Code § 16.1-283(C)(2), and that the termination of Brazell's parental rights was in the children's best interests.

III.

In sum, the circuit court did not abuse its discretion in denying Brazell's motion for a continuance. We similarly reject Brazell's argument, raised for the first time on appeal, that the circuit court should have retained court-appointed counsel on her behalf despite her lack of indigency. Finally, Brazell waived her sufficiency challenge on appeal by not raising it below. Based upon the evidence in this record, we conclude the good cause and ends-of-justice exceptions do not apply.

We thus summarily affirm the circuit court's termination orders pursuant to Rule 5A:27.

<u>Affirmed.</u>