COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Huff and Senior Judge Clements


FAYE FERRELL
                                                    MEMORANDUM OPINION*
v.       Record No. 0155-12-4                          PER CURIAM
                                                       JULY 3, 2012
ALEXANDRIA DEPARTMENT OF
 COMMUNITY AND HUMAN SERVICES


           FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        Donald M. Haddock, Judge

           (Dorathea J. Peters; Peters & Mullins, on brief), for appellant.
           Appellant submitting on brief.

           (James Banks; Mary Elliott O'Donnell; Ellen Dague, Guardian *ad
           litem* for the minor child; Office of the City Attorney, on brief), for
           appellee.  Appellee and Guardian *ad litem* submitting on brief.


       Faye Ferrell (mother) appeals from an order terminating her parental rights to her youngest

child.  Mother argues that the trial court erred by (1) terminating her parental rights when she made

"significant progress" in eliminating the conditions which led to or required continuation of the

child's placement in foster care; and (2) approving the Entrustment Agreement which mother signed

and finding that it was in the best interests of the child.  Upon reviewing the record and briefs of the

parties, we conclude that the trial court did not err.  Accordingly, we affirm the decision of the trial

court.

                                   BACKGROUND

       We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother has four children.[1]  The City of Alexandria Department of Community and Human Services (the Department) initially became involved with mother in January 2005 because mother was homeless and unable to care for her daughter.  The Department removed the child from mother's care and assisted her with housing, counseling, and employment.  In June 2006, mother gave birth to her second child.  In March 2007, the Department returned mother's oldest child to her custody because mother complied with the Department's requirements.

In November 2009, the Department filed abuse and neglect petitions related to mother's two children and removed them from mother's care.  In December 2009, mother gave birth to her third child.  The Department ultimately removed the third child from mother's care.

The Department provided mother with assistance and services, including a home-based worker and budgeting assistance.  In April 2010, mother completed a psychological evaluation, which revealed that she had inadequate coping skills, low self-esteem, difficulty trusting others, and resistance to treatment.  The Department also referred mother to Drug Court, and mother participated in the program from spring 2010 to May 2011.

On August 2, 2010, the Department placed mother's three children back into her care.[2]  The Department continued to provide mother with services to assist her with parenting skills.  The two oldest children participated in individual therapy.

Due to concerns about the children's safety and mother's ability to parent her children, the Department removed the three children from the home on January 27, 2011.  The Department then sought to terminate mother's parental rights, which the juvenile and domestic relations district court (the JDR court) approved on May 2, 2011.  Mother appealed the termination of her

---

[1] This appeal concerns the termination of mother's parental rights to her youngest child, D.F.

[2] The Department retained legal custody of the children.

- 2 -

parental rights to her three oldest children to the trial court. The trial court terminated mother's parental rights, and mother appealed to this Court. On February 14, 2012, this Court summarily affirmed the trial court's ruling.[3]

On May 3, 2011, the day after the JDR court terminated her parental rights to her three oldest children, mother gave birth to her fourth child, D.F. The Department removed D.F. from mother's custody on May 4, 2011. The JDR court found that D.F. was at risk of abuse and neglect and approved an initial foster care plan with a goal of adoption. The Department filed a petition to terminate mother's parental rights to D.F.

On August 5, 2011, the day of the trial in the JDR court on the Department's petition, mother signed a document titled, "Entrustment Agreement for Permanent Surrender of a Child" (the Entrustment Agreement). The Entrustment Agreement stated that mother voluntarily agreed to terminate her parental rights to D.F. and granted the Department custody of the child. The JDR court approved the goal of adoption and terminated mother's parental rights based on the Entrustment Agreement. Mother appealed, and after hearing the evidence and argument, the trial court approved the Entrustment Agreement and terminated mother's parental rights to D.F. This appeal followed.

ANALYSIS

Termination of parental rights

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

---

[3] See Ferrell v. Alexandria Dep't of Cmty. and Human Servs., Record No. 1705-11-4 (Va. Ct. App. Feb. 14, 2012).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Mother argues that the trial court erred in terminating her parental rights because she improved her situation from when the Department removed her three oldest children. Mother contends she had employment and housing and completed Drug Court.

At the time of the hearing in the trial court, this Court had not issued its opinion in mother's appeal of the termination of her parental rights to her three oldest children. The trial court proceeded with a hearing on what was in the best interests of D.F. without relying on the termination of mother's rights to her other children pursuant to Code § 16.1-283(E).[4] The Department confirmed that it was proceeding under Code § 16.1-277.01, approval of an entrustment agreement, and not Code § 16.1-283, involuntary termination of parental rights.[5]

Pursuant to Code § 16.1-277.01(D),

> [I]f the petition seeks approval of a permanent entrustment agreement which provides for the termination of all parental rights and responsibilities with respect to the child, the court shall make a finding, based upon clear and convincing evidence, whether termination of parental rights is in the best interest of the child. . . . This order shall include, but need not be limited to, the following findings: (i) that there is no less drastic alternative to granting the requested relief; and (ii) that reasonable efforts have been made to prevent removal and that continued placement in the home would

---

[4] The residual parental rights of a parent or parents of a child who is in the custody of a local board or licensed child-placing agency may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . .

Code § 16.1-283(E).

[5] Mother incorrectly states in her assignment of error that her parental rights were terminated under Code § 16.1-283.

- 4 -

be contrary to the welfare of the child, if the order transfers legal custody of the child to a local board of social services.

The Department presented evidence of all of the services previously provided to mother and copies of the orders entered in the cases involving her other children. The Department also submitted the psychological evaluation performed on mother in April 2010. The evaluator concluded that mother had inadequate coping skills and limited cognitive abilities, which leads to mother's impulsivity and poor decision-making. The evaluator recommended that mother participate in counseling and be referred for a psychopharmacological consultation, but warned that mother would be resistant to treatment and medication. The Department then presented evidence that mother stopped her individual therapy sessions in July 2011. She also stopped taking her psychotropic medications.

"'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

Mother's past actions with respect to her other three children indicate that D.F. is at risk of being abused and neglected by mother. Mother was not able to provide a safe and suitable home for her children. She was not able to adequately parent and supervise them. There was no indication that mother changed since the birth of D.F., one day after the JDR court terminated her parental rights to her three children. In fact, mother testified that she stopped counseling and taking her medication. When asked if she thought she had any deficiencies in parenting that needed to be corrected, mother responded, "I had maybe one, offhand, and that's being on time to get my kids wherever they need to be, like school, doctor, now that I can say that I needed, you know, more help with, being on time for stuff. But other than that, no." Despite all that she had been through with the Department, mother believed that she was adequately taking care of the children and did not recognize any problems.

Mother's latest efforts to obtain employment and housing were not sufficient to overcome her recent history of parenting. The record provides clear and convincing evidence that termination of mother's parental rights was in the best interests of D.F.

Revocation of the Entrustment Agreement

Mother argues that the trial court erred in approving the Entrustment Agreement. She asserts that she tried to withdraw it by appealing the JDR court decision approving the Entrustment Agreement and terminating her parental rights. She states that her actions show her true intention.

> A valid entrustment agreement terminating all parental rights and responsibilities to the child shall be revocable by either of the birth parents until (i) the child has reached the age of 10 days and (ii) seven days have elapsed from the date of execution of the agreement. In addition, a valid entrustment agreement shall be revocable by either of the birth parents if the child has not been placed in the physical custody of the prospective adoptive parents at the time of such revocation. Revocation of an entrustment agreement shall be in writing and signed by the revoking party. The written revocation shall be delivered to the child-placing agency or local board to which the child was originally entrusted. Delivery of the written revocation shall be made during the business day of the child-placing agency or local board to which the child was originally entrusted, in accordance with the applicable time period set out in this section. . . .

Code § 63.2-1223.

As the Department notes, mother failed to deliver written revocation to the Department; instead, she simply appealed the JDR court's decision. Mother's appeal of the JDR court's decision did not meet the statutory requirements for revoking the Entrustment Agreement. In Butler v. Culpeper Cnty. Dep't of Soc. Servs., 48 Va. App. 537, 546, 633 S.E.2d 196, 200 (2006), this Court held that "the trial court properly relied upon the entrustment agreements to terminate Butler's residual parental rights" because Butler "failed to comply with a crucial statutory requirement," namely the delivery of the written revocation to the Department.

Since mother did not deliver written revocation to the Department in this case, the trial court did not err in approving the Entrustment Agreement.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>